In the Matter of the Claim of KATHERINE ANDREWS, Respondent, against L. & S. AMUSEMENT CORPORATION et al., Appellants.

THE STATE INDUSTRIAL BOARD, Respondent.

(Submitted January 6, 1930; decided February 11, 1930.)

*Jeremiah F. Connor* and *H. C. Houlihan* for appellants. The injury which resulted in the death of the employee was not due to any incident connected with the employment, and did not arise out of the employment. (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148; *Matter of Scholtzhauer* v. *C. & L. Lunch Co.*, 233 N. Y. 12; *Rogers* v. *Paisley School Board*, 49 Scot. Law Rep. 413; 5 B. W. C. C. 547; *Wright & Greig, Ltd.*, v. *McKendry*, 11 B. W. C. C. 402; *Matter of Collins* v. *Brooklyn Union Gas Co.*, 171 App. Div. 381; *Swansea Vale* v. *Rice*, 4 B. W. C. C. 298; *Matter of Dow*, 231 Mass. 348; *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421; *Board of Commissioners* v. *Shertner*, 73 Ind. App. 589; *Matter of McCarter* v. *La Rock*, 240 N. Y. 282.)

*Hamilton Ward, Attorney-General (E. C. Aiken* of counsel), for respondent. The award should be affirmed. (*Myusert* v. *Albany Builders Supply ·Co.*, 250 N. Y. 21.)

CRANE, J. On the 20th of August, 1928, Leslie Andrews resided at 91 Brook street, Tompkinsville, Staten Island, and was employed as a handy man by the L. & S. Amusement Corporation, with office and principal place of business located at 120 Victory boulevard, Staten Island, N. Y. The employer was engaged in operating a theatre. On that day Leslie Andrews was hired to paint the marquise. He asked one Van Mersereau, a fellow-employee, for a pail of water, and they both walked toward the faucet along the alleyway at the corner of the building. Mersereau was carrying the pail. While thus proceeding, Andrews was taken with a fit. Mersereau describes it by saying that he saw the rolling of his eyes and the white stuff coming from his mouth. Andrews fell striking his head on the

sidewalk, made of concrete. The State Industrial Board found as a fact that Andrews " had an epileptic seizure which caused him to fall, and in falling his head struck the cement sidewalk, whereupon he sustained injuries in the nature of a fractured skull, from which he died on the same day." The Board made an award upon a finding that death resulted from accidental injuries arising out of and in the course of employment. The Appellate Division has affirmed by a divided court, upon the authority of *Matter of Mausert* v. *Albany Builders Supply Co.* (250 N. Y. 21). There is a distinction between that case and the one now on appeal.

Mausert, who was a teamster, fell from the seat of his truck to the pavement, the wheels passing over his body, causing death. He was in the course of his employment, and we held that his death arose out of his employment. The risk of falling from the seat of a truck and being injured was incident to and a risk of his employment. Every day that he was driving this truck there was the risk or danger that he might fall off, while careless or asleep, and be injured either by the horses, other vehicles or his own. This risk, we said in the opinion, would not surround him while sitting in a chair in his home, or upon the ground, or even while walking the streets. It was as a teamster that he incurred the risks. *Matter of Barath* v. *Arnold Paint Co.* (238 N. Y. 625), cited in the *Mausert* opinion, was another injury resulting from apoplectic stroke, the fall in that case being from a scaffold, causing a fractured skull. The conclusion there was that the risk or danger was one arising out of the employment because the loss of control through apoplexy while on a scaffold would result in a serious fall. The place of work increased the risk and danger from such an affliction.

None of these added risks or dangers are found in the facts of this case. Andrews was on the sidewalk; he had not commenced his painting; he was walking with his

co-employee to get a pail of water. The epileptic seizure caused him to fall to the sidewalk, striking his head and fracturing the skull. Where was there any added risk due to the employment? The same result might have followed if he had been coming to or going from his employment, or even in his own house, if he had fallen and struck his head on a chair, table or other hard substance. If the epileptic fit itself had killed him, like an attack of heart disease, all concede that there would be no recovery. The risk of falling to the pavement in such a fit was not due to the employment. Had Andrews fallen from a ladder, from a scaffold, from a stairway or down a hole, the chances of injury would have been increased. If there had been an accident causing his fall, we would have another element in the case. There was no accident; he fell because of internal disorders, and the injury resulted from no added risk because of his employment. This distinction runs through many cases. (See *Matter of Collins* v. *Brooklyn Union Gas Co.*, 171 App. Div. 381; *Matter of Hansen* v. *Turner Construction Co.*, 224 N. Y. 331; *Carroll* v. *What Cheer Stables Co.*, 38 R. I. 421; *Bd. of Commissioners of Greene Co.* v. *Shertzer*, 73 Ind. App. 589.)

On very similar facts, the Court of Session in Scotland, in *Rodger* v. *School Board of Paisley* (49 Scot. Law Rép. [1911, 1912], p. 413), held that death did not arise out of the employment. After delivering a message, William Rodger, a workman, was returning to his place of employment in Paisley. He was janitor at the North Public School at Paisley and had been sent by the school authorities to deliver a message. He became faint, leaned his hands against the wall of a house, and then fell backwards, striking his head violently upon the stone pavement. The cause of death was the fall, either from giddiness or faintness, brought on by the excessive heat of the day. The Lord President said: " I do not think that his employment in any way subjected him to the

particular class of accident in consequence of which he died. * * * He might have had this fainting fit in his own room and fallen against the fender, and he might on the other hand have fallen upon a soft rug in a room and upon some comparatively soft surface in the street.

" And this case is entirely distinguished, I think, from the other class of case where the particular situation in which a man is put makes the fall more than usually dangerous, such as the case where the man was standing near the hold of a ship, being obliged to be there by his occupation, and fell down the deep hold and hurt himself. * * * This man was hurt in going along an ordinary street. It was absolute chance that the pavement at that particular place, as it happened, was paving stone which cracked his head."

The case of *Thom* v. *Sinclair* (in the House of Lords) ([1917] App. Cas. 127) is exactly the same as *Matter of Fillitti* v. *Lerode Homes Corp.* (244 N. Y. 291). These were cases of falling walls, and in both it was held that the place of work was a risk arising out of the employment.

*Dennis* v. *White & Co.* (in the House of Lords) ([1917] App. Cas. 479) is similar to a long line of cases in this court, relating to " street employment." Where the work of an employee causes him to ride a bicycle through a street or to cross highways in the continuous performance of his work, here also is a risk which we have recognized as arising out of the employment. Such is the *Dennis* case.

In *Upton* v. *Great Central Ry. Co.* ([1924] App. Cas. 302) an employee of a railway was directed to travel to a station to repair a water main. As the train came in, he hurried across the platform to reach the train and slipped and hurt his knee, resulting in his death. An award was sustained. It would be sustained by us. We have such cases frequently. The man slipped and fell; there was an accident. A difference exists between such a case and one where a man falls because of internal troubles in no

way due to, or caused by his employment. All of these three cases are in harmony with everything that our court has decided. The *Rodger* case is not referred to in any of these opinions because it has nothing to do with the point.

*Wright & Greig, Ltd.*, v. *M' Kendry* (Court of Session, Scotland) ([1918] 11 Butterworth's Workmen's Compensation Cases, 402) does not overrule the *Rodger* case, but distinguishes it.

M'Kendry fell and struck his head, fracturing his skull. There was no evidence as to the cause of the fall, but it was assumed to have been caused by a uraemic fit. An awa d was sustained on the ground that he was injured in an accident arising out of his employment, and strange to say, the *Thom* case and the *Rodger* case are cited as authorities for the holding. The court said: " The circumstances of *Rodger's* case, in my opinion essentially distinguish it from the present. The fall happened on the public street. The janitor there differed in no material respect from any other passenger on the King's highway. The fact that he was on a message for his employers in no sense distinguished him, so far as risk or danger was concerned, from any other passenger or added to his risk." I doubt if we would have made this distinction.

Following, therefore, the distinction which has been drawn by this line of cases, and realizing that the Workmen's Compensation Law has not yet been extended to diseases which cause a man's death, unaccompanied by any added risk due to the employment, the order of the Appellate Division should be reversed and the claim dismissed, with costs against the State Industrial Board in this court and in the Appellate Division.

O'BRIEN, J. (dissenting). Leslie Andrews worked as a painter for appellant and, while engaged in the course of his employment, he was seized with an attack of

epilepsy. Falling upon a concrete walk where his duties as painter had taken him, he sustained a fracture of the skull which caused his death. His injury was due to the fact that his employment required him to be in a place where the fall proximately caused the injury. The disposition of this claim by the State Industrial Board and by the Appellate Division in making an award in favor of the dependent mother conforms, I think, with our ruling in *Matter of Mausert* v. *Albany Builders Supply Co.* (250 N. Y. 21) and with all other decisions which I can find except that of *Rodger* v. *School Board of Paisley* (49 Scot. Law Rep. 413), which has never, prior to our present decision, been accepted by this court and has been virtually overruled by the courts in Scotland and England.

Subjection of the average person to an ordinary risk is no longer one of the tests for determining the question whether the injury arises out of the employment. Whatever the earlier decisions may have been, they are rendered obsolete by such cases as *Dennis* v. *White & Co.* ([1917] App. Cas. 479); *Thom* v. *Sinclair* ([1917] App. Cas. 127); *Matter of Redner* v. *Faber & Son* (223 N. Y. 379); *Matter of Leonbruno* v. *Champlain Silk Mills* (229 N. Y. 470) and *Matter of Katz* v. *Kadans & Co.* (232 N. Y. 420). The test is the relation of the service to the injury, of the employment to the risk. (*Matter of Leonbruno* v. *Champlain Silk Mills, supra.*) The risk need not be one peculiar to the injured employee nor one from which the general public is exempt. Slipping on an icy road or walk is a hazard to which all are liable, yet, when the work requires exposure to such a risk, the injury arises out of the employment. (*Matter of Redner* v. *Faber & Son, supra; Matter of Lynch* v. *City of New York*, 242 N. Y. 115.) Danger of attack by a lunatic upon the public streets is unusual but, to the extent that such a danger exists, few are free from it. If the work involves exposure to this peril, if the workman is in the place of danger by reason of his employment, the injury arises

out of the employment. (*Matter of Katz* v. *Kadans & Co.*, *supra*.) Every one seeking shelter under a tree during a thunder storm is in peril of death by lightning. When a workman, employed as a road builder, finds such shelter and his death results from a stroke of lightning, it arises out of his employment. (*Matter of Madura* v. *City of New York*, 238 N. Y. 214.) This cause of an injury growing out of the employment must be immediate and proximate like poison, drowning, a blow or a fall resulting in some injury, or a similar force of exterior origin. It must, of course, bear a reasonable relation to the employment. An illness growing out of conditions foreign to the employment and creating no injury is not compensable. An illustration is found in *Matter of Hansen* v. *Turner Construction Co.* (224 N. Y. 331) where death was due solely to apoplexy without evidence of a fracture, a concussion or other injury. Given the injury, however, all remote conditions or events which have put in operation the proximate cause of actual injury may be disregarded. When a workman, seized with an attack of apoplexy, falls from a scaffold and fractures his skull (*Matter of Barath* v. *Arnold Paint Co.*, 238 N. Y. 625) or when another, in a fainting fit, falls from a wagon seat and sustains an injury of the same character (*Matter of Mausert* v. *Albany Builders' Supply Co.*, *supra*), the illness, which preceded the injury and constituted the proximate cause of the fall but only the remote cause of the injury, may be ignored. One afflicted by disease is not penalized by the statute. Any healthy man who, by accident and through sheer stupidity and clumsiness not due solely to intoxication, sustains an injury in the course of and arising out of his employment is entitled to compensation. An employee, whose wage consists of car fares and the price of a drink, falls down stairs. For the fatal injury resulting from this usual accident, common to all who neglect observance of elementary caution, the workman's widow was repaid. (*Matter of Greib* v.

*Hammerle,* 222 N. Y. 382.) A laborer, employed by a railroad company, hurries across a platform which is in perfect order, falls and hurts his knee. The House of Lords, rejecting the suggestion that the platform was slippery, held that the widow was entitled to recover on the principle that the injury arose out of the employment. (*Upton* v. *Great Central Ry. Co.,* [1924] App. Cas. 302.)

In one jurisdiction the opposite view was taken on a single occasion. In *Rodger* v. *School Board of Paisley (supra),* decided in 1912, the Court of Session in Scotland upheld the doctrine contrary to the one since adopted. Six years later it was cited as an authority by the employer but it was so distinguished by the court as to be substantially overruled in *Wright & Greig* v. *McKendry* (11 B. W. C. C. 402, 417). The principle of the *McKendry* case, to which reference is made in our opinion in the *Mausert* case, cannot be distinguished from that now before us. The facts are nearly identical. There, as here, the workman was seized with a fit, fell on a concrete floor and fractured his skull. A minute difference in the facts may be perceived in the cause of the fall, one being due to a uraemic fit, the other to epilepsy, and in the cause of the fractured skull, one being a concrete floor and the other a concrete walk. The court held that death was caused by accident arising out of his employment because, as stated by one of the judges, it was " due to a condition of the particular place where his employment required him to be at the time." Two of the judges referred to *Rodger's* case in such terms as to intimate, without actually asserting, that it had been overruled by *Thom* v. *Sinclair (supra).* A fourth member of the court observed in respect to *Rodger's* case: " Unfortunately this case was not referred to in *Thom* or *Simpson* v. *Sinclair,* although Lord KINNEAR was a party to both judgments." Since the decision in *Wright & Greig* v. *McKendry,* the *Rodger* case has lost all force

as an authority. The principle of the *McKendry* case was approved by the House of Lords in *Upton* v. *Great Central Ry. Co. (supra)*, the decision in which was rendered in 1923. Counsel for the respondent there cited *Rodger* v. *School Board of Paisley* in support of his contention that the injury did not arise out of the employment but Viscount HALDANE expressed his opinion to be that the injury so arises when " there has been injury by accident arising out of what the workman had to do, *merely because of the conditions of his employment*, as distinguished from being directly physically caused by it." He referred to the change of judicial attitude as displayed by the authorities subsequent to the year 1917 among which he mentioned *Thom* v. *Sinclair* ([1917] App. Cas. 127), *Stewart & Son* v. *Longhurst* ([1917] App. Cas. 249) and *Davidson & Co.* v. *M'Robb* ([1918] App. Cas. 304) and he added: " I think that the interpretation which I have placed on the language of the statute in reference to the kind of causal relation required, whether or not it is wholly consistent with *some earlier interpretations here and in Scotland*, is at least in harmony with the views authoritatively expressed in this House in the decisions I have quoted and in others which followed them later." Lord ATKINSON in a concurring opinion approvingly commented on *Frazer* v. *Riddell & Co.* ([1913] 7 B. W. C. C. 841) where an engine driver's fall from his engine was due to intoxication and stated that this fact did not preclude compensation to his widow, intoxication, under the English statute, not being in itself a defense in fatal accidents. He made reference also to *Wright & Greig* v. *McKendry* and stated that the concrete floor upon which the workman fell in a fit and fractured his skull was not found to be dangerous on which to walk.

Therefore, it follows, from the decisions of our own court as well as the later English and Scottish decisions, that an injury received in the course of employment does

not cease to be one arising out of the employment merely because some infirmity due to disease has originally set in action the final and proximate cause of the injury. The principle of the *Barath* case is not based upon the fact that the workman fell from a scaffold nor does the doctrine of the *Mausert* case depend upon the element of a fall from a wagon seat. I can find in the *Mausert* opinion no reference to compensability or lack of it, if the injured workman had been "walking the streets." The theory of both cases is that, in spite of the fact that an illness of some nature set in motion and exclusively induced the fall, the workman received an injury which was due to the place where his duty of employment required his presence. The distance which the body of the injured workmen descends until it comes in contact with the substance which causes injury is entitled to no consideration. One may fall from a considerable height upon soft ground and sustain no injury. Another may fall only the length of his body upon a rock and receive a mortal wound. A hole constitutes no greater hazard than a concrete floor or a railroad platform. What distinction in principle can be drawn between a concrete floor and a concrete walk? The question always is: Did the workman's employment require him to be in the place, whether a floor or a walk or other structure, which caused his injury? A weak ankle is not regarded by the courts of this State or of England as an asset for the recovery of compensation superior to a weak heart. A man carries with him all his disabilities, either those of age or of some other nature, and the fact that he has them does not destroy his right to recovery. (*Wicks* v. *Dowell & Co., Ltd.*, [1905] 2 K. B. 225, 231.)

I vote to affirm the order of the Appellate Division.

Pound, Lehman, Kellogg and Hubbs, JJ., concur with Crane, J.; O'Brien, J., dissents in opinion in which Cardozo, Ch. J., concurs.

Order reversed, etc.