**DAUB, Plaintiff-Appellee v. INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 3567.   Decided December 8, 1943.

W. A. Smith, Columbus; Earl Bougher, Columbus, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Columbus; A. B. Conn, Asst. Atty. General, Columbus, for defendant-appellant.

## OPINION

By BARNES, P. J.

The above-entitled cause is now being determined as an error proceeding by reason of defendant's appeal on questions of law from the judgment of the Common Pleas Court of Franklin County, Ohio.

Plaintiff's action, filed in the Common Pleas Court of Franklin County, Ohio, was based on a claim that on July 24th, 1939, her deceased husband, William J. Daub, while employed by the H. C. Godman Company, Columbus, Ohio, an employer who was amenable to and who had complied with the provisions of the Workmen's Compensation Act, met with an injury when a shoe rack moved away from him and he fell.

Plaintiff further alleged that as a direct result of said injury, William J. Daub sustained a concussion of the brain, cerebral hemorrhage and fractured rib; that as a direct result of the injury, his health was greatly impaired and that as a direct and proximate result thereof, he died on October 2nd, 1939.

The petition alleged her dependency and the necessary procedural steps to properly perfect her appeal to the Court of Common Pleas after disallowance of her claim by the Commission.

Issues were joined by the answer of the defendant which admitted many of the formal allegations of the petition, but denied the plaintiff's decedent sustained an accidental injury in the course of and arising out of his employment, and that the said alleged injury was the direct and proximate cause of his death on October 2nd, 1939.

The case was tried three times in the Common Pleas Court. In the first trial, jury was waived and the Court found in favor of the defendant. Motion for new trial was sustained by Judge Duncan on the ground that he was in error in admitting certain testimony offered by the defendant.

The second trial was before Judge King and a jury, resulting in a disagreement and the cause being continued for further trial.

The third trial was before Judge Clifford with a jury and resulted in a unanimous verdict in favor of the plaintiff. Motion for new trial was overruled and judgment entered on the verdict.

Within due time, notice of appeal was filed and the cause properly brought to our Court.

Counsel for appellant sets out ten separately numbered and stated assignments of error. In appellant's brief, these assignments are resolved by counsel in three separately stated propositions as follows:

"1. There is **no competent evidence whatsoever** upon which a jury could properly and lawfully predicate a verdict that the plaintiff's decedent sustained an accidental injury in the course of and arising out of his employment.

"2. The opinions expressed by the expert medical witnesses called on behalf of the plaintiff amounted to speculation and conjecture, and their conclusions were the result of predicating one inference upon another inference contrary to the doctrine enunciated by the Supreme Court in **Sobolovitz v Lubric Oil Company, 107 Oh St, 204, 140 N. E. 634.**

"3. The Court committed prejudicial error in excluding the opinions of the expert medical witnesses called to testify on behalf of the defendant."

We will consider the three questions in the order set out.

A consideration of statement No. 1 requires a careful reading of the bill of exceptions in the light of the issues joined under the pleadings. This we have done and the following is a brief summary of the uncontradicted facts.

On July 24th, 1939, plaintiff's decedent was a foreman in the Godman Shoe factory and for about one hour prior to 2:00 P. M. was standing at a shoe rack examining tickets which were on a hook at the end of the rack. A number of shoe racks were in this particular room, and all of similar construction. The one at which he was standing was approximately five feet in height, three feet or more in length and about eighteen inches in width. The frame ·was metal and four standards came down to the floor and into rollers so as to permit them to be moved from place to place by the employees.

The shelves in these racks were of wood and at that time

were four in number. They were designed to take care of about thirty-six pairs of shoes.

It is inferable that the tickets had notations thereon made by the employees and referred to the shoes in that particular rack.

Plaintiff's decedent was a very large man, approximately six feet in height, and weighing about two hundred pounds, being about sixty-two years of age and so far as is known, never had had any serious sickness before.

Prior to two o'clock, plaintiff's decedent had complained of not feeling well, rubbing his hands over his stomach as indicative of the seat of his trouble. His color was changed slightly to a pallor.

At or near two o'clock, one of the lady employees in this department screamed that Mr. Daub was falling. This attracted the attention of two other lady employees who were in close proximity. According to the testimony of these two lady employees, Mr. Daub had one hand on the rack and it was moving away from him and he was falling in the same direction. The floor was of hard wood and oiled. According to the testimony, Mr. Daub was partially supporting himself with one hand at the time he started to fall.

One of the witnesses who was only about six feet away went to him. He was on his right side unconscious or semiconscious, was jerking and trembling over his entire body. A pinkish foam was exuding from his mouth.

No witnesses saw his head strike anything and other than the shoe rack, there was no evidence of any other substance on the floor at or near where he fell.

He was immediately removed to the emergency room at the Godman Shoe Factory and the company physician was called. Very shortly thereafter a son of the decedent was called and he immediately called their family physician. The decedent was first removed to his own home and shortly thereafter to a hospital.

The family physician made a cursory examination at the factory and a more thorough examination at the hospital. There were bruises and abrasions on the right arm and shoulder and extreme tenderness in the right side which the family physician testified was indicative of a fractured rib. Neither the attending physician, the hospital attendants or members of the family gave any evidence of any surface indication of any bruises or lacerations on the head. In fact, the family physician and members of the family testified that they found none.

After a short stay at the hospital, the decedent was returned to his home. There was very slight, if any, improvement in his condition at any time, although he was up and able to walk. On October 2nd, plaintiff's decedent died.

According to the evidence of the family physician, the immediate cause of his death was cerebral hemorrhage. The attending physician's diagnosis made following the fall was "heat stroke accompanied by fall and cerebral concussion". The attending physician testified that his diagnosis of a heat stroke was purely a guess and his diagnosis of cerebral concussion was based on history of no previous sickness and the fact that after the fall, there was evidence of continued headaches, confusion and dizziness.

In cross-examination, the attending physician was inquired of as to how he could account for his diagnosis of concussion when there was no outward evidence of any injury to the head. He explained that a very hard blow to the head with a soft object might produce a concussion without leaving any perceptible evidence.

As heretofore stated, there was no evidence that decedent's head came in contact with anything. The shoe rack with metal standards and plank shelves was hard substance and had the decedent's head come in contact with any part of this rack, it is hard to understand how there would be the absence of lacerations or bumps on the head. The same would be true if his head came in contact with the hardwood floor with sufficient force to cause a concussion. We also consider that the uncontradicted evidence is that he fell on his right side and his right shoulder took the force of the blow as there was evidence of lacerations and bruises on the right shoulder and arm and extreme tenderness in the ribs.

The conclusion is irresistible that plaintiff's decedent fell because of some internal disorder.

Counsel for appellant argues from the undisputed evidence it was inferable that plaintiff's fall was occasioned by a slight cerebral hemorrhage which progressed until the time of his death and that there is no evidence, either direct or inferential, that the fall caused any injury to the brain.

Counsel for appellee argued that the fall was possibly due to a heat stroke and that his head came in contact with some substance that brought about a cerebral concussion. The jury, in answer to an interrogatory, returned the following answer:

"Not feeling well, and fell into or against a shoe rack, and that such fall caused a concussion of the brain and cerebral

hemorrhage, which was the proximate cause of his death October 2, 1939."

The family physician further testified that according to his diagnosis, there was a deterioration of the blood vessels. This was probably due to his age and good living.

Considering the record in its entirety, we were unable to find any evidence supporting the claim of cerebral concussion or that the fall had any causal relation to the cerebral hemorrhage which brought about the death on October 2, 1939. Furthermore, even if it be conceded that there is evidence supporting cerebral concussion, we still think there is no evidence of any causal connection between injury and employment.

This case is to be distinguished from **Nelson v Industrial Commission, 127 Oh St 41.** In the Nelson case, a workman, while in the regular course of his employment was seized with an epileptic fit and fell into or against a spot welding machine which fall caused a concussion of the brain resulting in his death; it was held that the injury was sustained in the course of his employment, and arising out of his employment, and is compensable. This case should be read in its entirety in order to understand its reasoning and scope. In substance, the welding machine was a hazard to which the workmen were subjected.

This is in line with many decisions, not only in this state, but in other jurisdictions.

The case of Andrews v Amusement Corporation, 253 N. Y., 97; (170 N. E. 506), very clearly illustrates distinguishing features in the instant case. In the Andrews case, an employee of the amusement corporation had an epileptic seizure which caused him to fall and in falling, his head struck a cement sidewalk and he thereby sustained a fractured skull from which he died. The Court held that the injury did not arise out of his employment, and said:

"The epileptic seizure caused him to fall to the sidewalk, striking his head and fracturing the skull. **Where was there any added risk due to the employment? The same result might have followed if he had been coming to or going from his employment, or even in his own house, if he had fallen and struck his head on a chair, table, or other hard substance. If** the epileptic fit itself had killed him, like an attack of heart disease, all concede that there would be no recovery. The risk

of falling to the pavement in such a fit was not due to the employment. Had Andrews fallen from a ladder, from a scaffold, from a stairway, or down a hole, the chances of injury would have been increased. If there had been an accident causing his fall, we would have another element in the case. There was no accident; he fell because of internal disorders, and the injury resulted from no added risk because of his employment."

As heretofore stated in the instant case, there is no evidence, either directly or inferentially, supporting the theory that plaintiff's decedent's head struck the shoe rack as he fell. If his head struck anything, it would be the floor and the physical condition even argues against this theory; but if his head did strike the floor, this would not be the basis for a conclusion that the injury arose out of the employment. This was the conclusion at which Judge Duncan arrived when the case was tried the first time. His opinion is appended to appellant's brief as Appendix A, pages 39 and 40.

Among other things as contained in the opinion, we find the following:

"The Court has arrived at the conclusion that the fall was caused either by a cerebral hemorrhage or by heat exhaustion, and that in either event there were no activities, conditions or environments of his employment which made a causal connection between said employment and any injury sustained by the fall. In other words, the Court finds that there was no hazard of his employment which caused the fall or contributed to the results thereof. The severity of the fall was not increased by the presence of the shoe rack, but was probably diminished by the at least temporary support furnished by said rack."

We understand fully that we are not reviewing Judge Duncan's opinion, but we quote therefrom for the reason that it conforms to our conclusions.

The case of **Bernheisel v Industrial Commission, 60 Oh Ap 186**, presents many factual situations similar to the instant case.

Finding as we do, this plaintiff has failed to offer proof that her decedent sustained an accidental injury within the meaning of the Workmen's Compensation Act, it follows that the judgment of the Common Pleas Court must be reversed and judgment entered for the defendant-appellant.

It naturally follows that having entered final judgment for the defendant, the remaining errors complained of are unimportant. However, since the statute requires up to pass on all errors assigned, we will very briefly refer to the remaining claimed errors.

Statement No. 2 is so closely related to statement No. 1 that we do not think any further comment is necessary.

In statement No. 3, complaint is made that the Court committed prejudicial error in excluding the opinion evidence proffered by two expert medical witnesses called to testify on behalf of the defendant.

This claimed error arises in the following manner: It must be remembered that in an action of this character, the testimony is originally taken on rehearing before the referee appointed by the Industrial Commission. Upon appeal to the Common Pleas Court, the case is submitted upon the evidence taken before the referee and none other.

The third witness to be called on behalf of the defendant was Dr. A. J. Enderlin. Dr. Enderlin was the physician called by the Godman Shoe Company immediately following the decedent's fall. Objection was interposed on the ground that it was confidential and privileged. Counsel for the Commission admitted that under the decisions of the Supreme Court of Ohio, this evidence was not admissible.

Previously, the doctor had testified that he procured a history from the injured man of dizziness before the fall. Later, counsel for the Commission called Dr. Roy J. Secrest and Dr. George I. Nelson. Both witnesses were called as medical experts. Neither knew or ever saw the decedent during his lifetime or after death. Hypothetical questions were presented and were very lengthy.

In the hypothetical questions, it was stated that prior to decedent's fall he was dizzy. The evidence of both witnesses was excluded in its entirety for the apparent reason that the only basis for the history of dizziness was in the excluded testimony of Dr. Enderlin. Even if this be correct, we think that the Court was in error for excluding the testimony in its entirety for the reason that both experts were asked questions and made answers to matters unconnected with the hypothetical question. Furthermore, we find that there is evidence in the record, supporting the factual claim of decedent's dizziness before his fall. This is found in the testimony of the family physician, Dr. Junkerman, at pages 61, 62 and 63 of the bill of exceptions.

It was brought out that Dr. Junkerman had given an affidavit to the representative of the Commission when the latter was investigating the claim.

The doctor's affidavit contained the following statement:

"* * * that fellow employees stated that the decedent became dizzy and fell, this history being corroborated by decedent at the hospital."

It is true that the doctor had previously testified that the decedent had not made any statement about having become dizzy. Evidently the doctor had forgotten about his previous affidavit. He admitted the contents of the affidavit and said the statements made therein were true. He volunteered the information, however, that the statement of the injured man was not reliable, since he had been unconscious and following unconsciousness a person is not able to relate accurately what has transpired before.

We think this would be the supporting basis for the hypothetical question, and the question of the explanation by the doctor would be a matter for the jury.

Furthermore, Dr. Nelson, during his cross-examination, was inquired of as to whether he considered the question of dizziness in his answer to the hypothetical question, and he said he did. Counsel then proceeded further in the cross-examination, to inquire whether or not if that element was eliminated, his evidence would be different. The doctor said it would not.

He further testified that his conclusions would be the same whether or not the element of dizziness was included in the hypothetical question.

Counsel for appellee argues that this testimony could only be considered as impeaching in character and not substantive. Under the peculiar facts in the instant case, it would be both. The doctor's admission that the decedent did make such a statement to him was the declaration of substantive character.

The argument is also made that counsel for defendant made no offer to prove. The bill of exceptions showed differently, although counsel may not have used the expression, "offer to prove".

It is our conclusion that the Court was in error in excluding the testimony of the two expert witnesses offered on behalf of the defendant.

As heretofore stated, plaintiff's petition will be dismissed and judgment entered in favor of the defendant.

Costs will be adjudged against the defendant.
Case remanded.

HORNBECK and GEIGER, JJ., concur.