In the Matter of the Claim of JULES STERN, Respondent, against ELECTROL, INC., et al., Appellants. Workmen's Compensation Board, Respondent.

Third Department, June 13, 1957.

*John E. Knauf* for appellants.

*Ernest Tischler* and *I. B. Stern* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General* (*Gilbert M. Landy* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

BERGAN, J. Claimant had a congenital aneurysm of the left middle cerebral artery which lay directly under the motor speech area of the brain. An aneurysm is a thinning of the wall of the artery, sometimes accompanied by distension of the vessel. The one found in claimant was described by the surgeon who dealt with it, as a "very large, very thin wall aneurysm". The condition had not been observed or diagnosed, or apparently known to the claimant, until the events occurred which give rise to this claim.

The employer was engaged in the manufacture of hydraulics and the claimant was employed as a tool designer. In this occupation he worked at a draftsman's desk which had an adjustable height of 31½ to 43½ inches and he sat on an adjustable draftsman's stool 25½ to 30 inches high. On July 17, 1951 claimant fell to the floor of the office where he worked and struck his head. Following this fall it is undisputed that claimant was suffering from a rupture of the aneurysm from which blood was leaking. A grave physical condition resulted which required for repair the intervention of neurological surgery.

The Workmen's Compensation Board has found that the fall was an industrial accident and that the rupture of the aneurysm was a consequence of the fall. Both points are contested by appellants on appeal; but we are of opinion that there is substantial evidence to sustain the decision of the board.

We examine first the facts of the accident. The claimant himself, testifying with some difficulty because of the residual effect of the ruptured aneurysm on his speech and co-ordination of thought, gave his own version of what had happened. He said

that as he was sitting in the draftsman's stool at his desk he sneezed and that the chair — the "whole thing" — started "going around". He further testified that as he sat down the stool "swiveled" or "turned" and he felt himself being "thrown off the chair or falling off the chair". A fellow employee working in the room testified that he heard claimant sneeze a few times and saw him sit down on the stool. Turning his attention away momentarily, the witness heard claimant's head hit the floor and then saw him lying on the floor.

In our opinion this testimony describes events which could have been found by the board to be an industrial accident. If the somewhat unusual height of the stool and the desk or the movement or swiveling of the stool as claimant started to sit down, were ingredient in the occurrence of the fall it may be found accidental even though the claimant's own physiological condition entered into causation.

The principles which ought to apply to the kind of accident in which the equipment in the plant plays some part in the occurrence or effect of a fall which may in part be due to internal physiological conditions are similar to the parallel rule which we discussed in *Matter of Dasaro* v. *Ford Motor Co.* (280 App. Div. 266). There the factual decision by the board against the claimant was that no equipment or furniture in the plant played any part in the fall of claimant who had suffered an epileptic seizure.

To see that rule in fair perspective, *Matter of Andrews* v. *L. & S. Amusement Corp.* (253 N. Y. 97) should be compared with *Matter of Connelly* v. *Samaritan Hosp.* (259 N. Y. 137). In the first case the employee due to physiological causes fell on the sidewalk and it was held that no "added risk" was added by the conditions of employment to the chances of fall at the place where the accident happened; while in the latter case the employee, suffering a heart attack fell and struck her head and chest against a table; and this was regarded as a special hazard associated with the work. (Cf. *Matter of Zaroian* v. *Aluminum Co. of America,* 270 App. Div. 966, motion for leave to appeal denied 296 N. Y. 1062; where there was a fall, apparently unexplained, from a platform seven feet from the ground, and *Matter of Mausert* v. *Albany Builders Supply Co.,* 250 N. Y. 21, where the teamster fell from the driver's seat and was injured by the wheels of the wagon.)

On the record before us it was within a fair scope of the board's power to find that the stool, of rather unusual height in the first place, moved or turned when claimant sat in it and

that these factors played some contributing part to the accident. In our view that is enough.

The remaining question is whether the blow on the head resulting from the fall could have been found sufficient to set up the rupture and resulting bleeding of the aneurysm. In our opinion the medical proof is sufficient to sustain the finding of the board on this aspect of the case.

In the first place it could be found that the blow of the fall was a heavy one. Not only did the fellow employee hear the head strike the floor, but the physician who treated claimant immediately after the fall observed, among other things, that he had a "contusion occipital part of the skull". The severe neurological symptoms which led to the undisputed diagnosis of ruptured aneurysm followed in close sequence to the fall; and claimant's condition continued to grow worse until corrected surgically.

The written report of the eminent neurological surgeon who operated on claimant stated, among other things, that "it is conceivable that a severe blow on the head might cause a thin-walled tightly distended aneurysm to leak". This concept was enlarged and made very much more definite in the physician's testimony. He was asked a hypothetical question which ended with the inquiry whether in his opinion " striking his head on the floor would be competent to cause a rupture of the aneurysm ". The witness asked for clarification by the comment whether what the question sought " was whether the striking of his head was the competent producing cause". When this was clarified the physician said " I would think that it was possible ".

The next question was whether a violent blow on the head was possibly a competent producing cause; and in response to this question, the witness was greatly more specific. He answered: " I think it could rupture one of this size and thinness." There is other medical testimony by the same witness which might suggest other inferences; but there is nowhere a disavowal of the opinion here quoted; and on the whole medical proof we are of opinion the board could have found the blow on the head due to the fall contributed to the rupture of the aneurysm. This leads us to affirm.

The award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., HALPERN and GIBSON, JJ., concur.

Award affirmed, with costs to the Workmen's Compensation Board.