In the Matter of the Claim of MARY FRAGALE, Respondent, *v.* ARMORY MAINTENANCE et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, January 5, 1966.

*Joseph M. Soviero* and *Bernard F. Farley* for appellants.

*Louis J. Lefkowitz, Attorney-General* (*David Belson* and *Daniel Polansky* of counsel), for Workmen's Compensation Board, respondent.

*Isaacson, Robustelli & Fox* for claimant-respondent.

GIBSON, P. J. Appeal is taken by an employer and its insurance carrier from a decision of the Workmen's Compensation Board which awarded benefits on account of the death of an employee due to a heart attack, caused by " a severe commotion to the chest ", as evidenced by fractures of four left ribs and by hemorrhages, all as demonstrated on autopsy; this in the words of claimant's medical expert, whose opinion of causal relation was adopted by the board, and which conclusion, although controverted before the Referee by other medical opinion, seems not to be disputed here; appellants contesting the award solely on the ground that the " accident did not arise out of and during the course of the employment."

The accident occurred during an argument between decedent and a coemployee, the only surviving witness to the affair, who said that after a discussion in which he ridiculed decedent's idea of removing his home to a place nearer his employment, decedent came at him; he pushed decedent, who knocked his hat off; whereupon he again pushed decedent back. The witness continued: " I must have pushed him into the chair, and the chair was one of those type chairs which wobbled around and the thing turned over and he fell on the arm of another chair, a low chair." Claimant died en route to the hospital.

The chairs were furnishings of the small so-called guard's shack in which the incident occurred, had been discarded from use elsewhere on the premises and were described by other witnesses — that into which decedent was first pushed as being a typist's swivel chair, with casters, and the second chair,

into which he fell with his body across the arm or arms, as a tubular aluminum chair with wooden arm rests.

The board properly found " that the decedent sustained an accidental injury arising out of and in the course of his employment * * * when he was engaged in an altercation with the co-employee and fell from the swivel chair, causing fractures of the ribs and precipitating the coronary thrombosis.'' Appellants argue, and the minority opinion asserts, that the altercation was not the sort of work-induced or work-connected argument or physical encounter upon which a compensable injury may be predicated; and, for the purposes of this appeal at least, that may readily be conceded, as such was not the basis of the award in any event. Death was caused when decedent fell from an unstable chair — an instrumentality and hazard of the employment — into collision with the arm of another chair — an additional work hazard; and, as claimant's expert testified: " the actual *modus operandi* of death [was] physiological ", death occurring " as a result of this trauma to the chest with the hemorrhage into the coronary athermatous placue ". True, the argument and the push initiated the sequence of events, but they were, at most, concurring causes of the ultimate result, the effective and operative cause of which was a new and concurring factor — the hazard constituted by the guards' chairs — without which the fatal injury would not have occurred. The rule was stated with clarity by Judge LEHMAN, who wrote: " Thus where the primary cause of the accident must be eliminated because it has no relation to the employment, the inquiry proceeds to possible co-operating causes which produced the injury. The test is the same. If, except for the employment, the fall though due to a cause not related to the employment, would not have carried the consequences it did, then causal connection is established between injury and employment, and the accidental injury arose out of the employment. The employment has subjected the workman to a special danger which in fact resulted in injury.'' (*Matter of Connelly* v. *Samaritan Hosp.*, 259 N. Y. 137, 140–141.) Subsequent references in the opinion to other reported cases make it abundantly clear that it is the co-operating factor — the new and special danger — and not the initial impetus, which determines compensability; and thus, injuries sustained by an employee walking in the street, upon falling to the pavement in the course of an epileptic seizure were not compensable (*Matter of Andrews* v. *L. & S. Amusement Corp.*, 253 N. Y. 97) but an employee's unexplained fall from a wagon to the pavement, where the wheels passed over him, gave rise to an industrial accident, as " the cause

may be disregarded and the inquiry limited to an investigation to disclose whether the fall, having occurred, bore with it such consequences as would not have occurred except for the employment." (*Matter of Mausert* v. *Albany Bldrs. Supply Co.*, 250 N. Y. 21, 25.)

There is indication in the autopsy report in the case before us that "a roller fell off the [swivel] chair" and the coemployee testified that the swivel chair "wobbled around and * * * turned over", creating a situation closely parallel to that in another case which we analyzed by saying: "If the somewhat unusual height of the stool and the desk or the movement or swiveling of the stool as claimant started to sit down, were ingredient in the occurrence of the fall it may be found accidental even though the claimant's own physiological condition entered into causation"; and in which case we further held that "it was within a fair scope of the board's power to find that the stool, of rather unusual height in the first place, moved or turned when claimant sat in it and that these factors played some contributing part to the accident. In our view that is enough." (*Matter of Stern* v. *Electrol, Inc.*, 4 A D 2d 110, 112–113, mot. for lv. to app. den. 3 N Y 2d 707.)

There seems to us no basis in reason or logic or in any previous judicial decision to differentiate the idiopathic fall cases, in which this principle of co-operating cause has been applied, from the factual situation now before us; nor can we agree with the statement in the minority opinion that we "rejected" the principle in *Matter of McKeon* v. *City of New York* (16 A D 2d 1004, mot. for lv. to app. den. 12 N Y 2d 644) and in *Matter of Lozupone* v. *Liberty Fabrics* (20 A D 2d 624) in which, in each instance, we affirmed, without opinion, the board's factual determination *disallowing a* claim. Certainly it cannot be said that judicial precedent or even esoteric significance of some sort is to be found in an affirmance without opinion, the basis of which cannot with certainty be demonstrated, and certainly cannot be ascertained and followed by other courts or by the Bar. Research discloses no reported case in which the principle of co-operating cause has been held to be inapplicable in any of the so-called assault cases or to be restricted to cases of idiopathic falls. (Cf., e.g., *Sivertsen* v. *State of New York*, 24 A D 2d 918.)

If it is to the added employment-connected factors or the "co-operating causes" that we must look (*Matter of Connelly* v. *Samaritan Hosp.*, 259 N. Y. 137, 140, *supra*) it seems impossible to distinguish such an initially impelling force as the thrust of an internal convulsion or the surge of a hemorrhage

from the impetus of a playful push or, indeed, a willful assault; or to differentiate the latter from such other forces as an explosion or the collapse of a wall occurring off the premises but causing injuries upon them. (See, e.g., *Matter of State Ind. Comr.* v. *Leff*, 265 N. Y. 533; *Matter of Filitti* v. *Lerode Homes Corp.*, 244 N. Y. 291.) The distinction is not to be found in the fact of the assault, for it is recognized that if the quarrel is sufficiently connected to the work, coverage will exist (see, e.g., *Matter of Toro* v. *1700 First Ave. Corp.*, 16 A D 2d 852, affd. 12 N Y 2d 1001; *Matter of Muscott* v. *Janice Stores Corp.*, 6 A D 2d 921; *Matter of Gray* v. *Daily News*, 284 App. Div. 911, mot. for lv. to app. den. 308 N. Y. 1049) and it has been held that it is not material that claimant may have been the aggressor (*Matter of Comr. of Taxation & Finance [Callahan]* v. *Bronx Hosp.*, 276 App. Div. 708, mot. for lv. to app. den. 301 N. Y. 813); and only in an extreme case could there be applied the statutory preclusion from benefits by reason of an injury "solely occasioned * * * by wilful intention of the injured employee to bring about the injury * * * of himself or another." (Workmen's Compensation Law, § 10.)

In further seeking a rational basis of distinction, it might be said that in an assault case the initiating cause is a personal one — unlike the off-premises explosion; but the "idiopathic-fall" cases in this respect can be closely analogized to the cases of privately motivated assaults. In both instances, the central causal factor is personal — intensely and conspicuously personal — whether it is a diseased heart, or a personal enemy who is determined to shoot the employee wherever and whenever he can find him." (1 Larson, Workmen's Compensation Law, § 12.14, p. 192.16.) The same author argues for the compensability of an injury in a situation which he hypothesizes and which seems closely parallel to that before us, whereby an employee is wounded in the shoulder by a rifle shot directed by his personal enemy and is caused to topple into the cement mixer at which he is working. Professor Larson concludes: "The shoulder wound would be clearly noncompensable, just as the purely internal effects of a heart attack in an idiopathic fall case are not independently compensable. But the added effects of falling into the cement mixer would be compensable, just as if the employee had had an idiopathic fall into a cement mixer." (Larson, *op. cit.*, § 12.14, pp. 192.16–192.17.)

Reason and logic, and sound analogous precedent as well, seem clearly to require affirmance.

The decision should be affirmed, with costs to the Workmen's Compensation Board.

REYNOLDS, J. (dissenting). The background of this case is bizarre. At the hearings the claimant's attorney attempted to prove that there was here involved a work-connected argument which led to a melee resulting in decedent's injuries and death. In his closing statement before the Referee he said: "Therefore, it becomes one of a question, did what took place in that shack have any connection with the business. If it was purely a personal thing, arising not out of the course of the employment, death without question would be related to the accident, but accident would not be related to the employment. That I have to concede."

The Referee understandingly enough could not find any work-connected argument and made the following statement as his basis for making the award: "I'm going to state this for the record. I believe that irrespective of whether the argument was personal in nature or impersonal in nature is not the true issue here. * * *. I do feel, however, that when men are thrown together in close proximity one cannot expect them to carry on their work without having some type of friction and this is a concomitant of the employment and therefore the accident as such it was, arose out of and in the course of the employment."

This basis for his decision is completely erroneous. The "friction and strain" rule is not now and never has been the law in New York (*Matter of Pryor* v. *Presbyterian Home for Aged Woman,* 11 A D 2d 832, revd. 9 N Y 2d 869; *Matter of Scholtzhauer* v. *C. & L. Lunch Co.,* 233 N. Y. 12; *Matter of Jiminez* v. *Egenhauser,* 16 A D 2d 720; *Matter of Zimmerman* v. *Comet Container Corp.,* 4 A D 2d 724) or as, a matter of fact, generally in the United States. Larson calls attention to strictly isolated cases (particularly relied on is *Hartford Acc. & Ind. Co.* v. *Cardillo* [112 F 2d 11; C. A., D. C., 1940]) wherein a finding of work-connection has been predicated on the mere fact that a friction of personalities resulted from the combatants being brought together by their common employment. At the time of writing his 1964 revision he felt that New York might be heading somewhat toward the *Hartford Accident* rule (1 Larson, § 11.22, pp. 176–178). He supports his position by citing *Matter of Katz* v. *Reissman-Rothman Corp.* (261 App. Div. 862, mot. for lv. to app. den. 285 N. Y. 859) and *Matter of Pryor* v. *Presbyterian Home For Aged Women* (11 A D 2d 832). In *Katz,* claimant was attacked by a co-employee who apparently was jealous of attentions paid to claimant by a third co-employee of the opposite sex. In the *Pryor* case, the assailant had acquired his attachment to claimant while at work. He was

discharged for other reasons but he came back a couple of days later and assaulted her. Apparently it was after Larson revised this section that the Court of Appeals reversed *Pryor* (9 N Y 2d 869), holding that it could not reasonably be said that the injury was work connected.

In the board's decision we have some general conclusory statements but no findings either as to whether this was a personal or work-connected argument. Additionally, there was no reference to the Referee's basis for awarding compensation, " the friction or strain rule ". Further there was no indication that the board was attempting to extend an exception (the rule of the idiopathic fall cases) to privately motivated assaults. This is understandable because there are no reported cases in the United States which do this, and this court has twice recently affirmed a denial by the board of such an extension (*Matter of McKeon* v. *City of New York,* 16 A D 2d 1004, mot. for lv. to app. den. 12 N Y 2d 644; *Matter of Lozupone* v. *Liberty Fabrics,* 20 A D 2d 624). For these reasons it is difficult to decide the case because there is not the slightest hint as to why the board affirmed and the case should have been remitted for further and clarified findings.

When we come to the Attorney-General's brief and the argument before this court, it was conceded that the discussion and assault were non-work connected. The argument in defense of the award here was that the chain of causal relationship between the push (decedent had rushed and swung on the coemployee and was pushed backward over the chair) and the fall was broken by a new and independent work-related cause, an intervening and superseding factor, (that in the course of the fall, decedent fell over a chair) and that the idiopathic fall rules should be extended to assaults. The majority opinion indorses this position, but as I have stated before, there is no jurisdiction in the United States which subscribes to this theory, and a fortiori the two New York cases, *McKeon* (*supra*) and *Lozupone* (*supra*), are exactly contra. These cases are holdings of this court, and the Court of Appeals by denying leave to appeal in *McKeon* has at least tacitly approved thereof since the issue was there squarely presented.

It appears from this blurry, grotesque background that the first thing we must do, since the case is not being remitted for clarified findings, is to bring the issues raised by the argument before this court and in the board's brief into clear focus. These simply stated are:

(1) Can the decedent engage in a concededly personal discussion with and an attack upon a coemployee, albeit on the employ-

er's premises, and then when he is pushed over a chair in the melee (and suffers injuries superimposed on an underlying heart condition which causes death) be judged to have had an accident which arose out of and in the course of his employment?

(2) Should the exception applied thus far only to idiopathic falls (a nonoccupational heart attack, fainting spell or epileptic fit where the effects of the fall are compensable if the employment places the employee in a position increasing the effects of such a fall, such as from a scaffold, etc.) be extended to a voluntary, privately motivated, non-work connected, personal assault case?

It might be well at this point to cover certain discussions and citations in the majority opinion which are foreign to these issues in order to strip this matter of immaterial considerations. The citations and material beginning with *Matter of Toro* v. *1700 First Ave Corp.* (16 A D 2d 852) may be disregarded because they concern injuries arising from work-connected assaults and have nothing to do with the problem herein, and in *Matter of Stern* v. *Electrol, Inc.* (4 A D 2d 110), which involved a fall from a stool of unusual height, BERGAN, J., merely said that the board could properly find, as they did, that if the high stool moved or turned when claimant attempted to sit on it and he fell, there was an industrial accident. He also said gratuitously that the turning of the stool might be a contributory cause even though claimant's own physiological condition may have entered into it. It should be pointed out, however, that there was no testimony in the present case by any witness that a roller fell off the chair or that the roller or caster had anything to do with the fall. The reference to a roller in the autopsy report was at best uncorroborated, unconnected hearsay, and there was no such finding by the board nor could there have been. If there was a roller off the chair, which the evidence does not substantiate, the only reasonable inference would be that it was dislodged when decedent came crashing over the chair in the fall. Therefore *Matter of Stern* has no remote connection with our problem. The other cases cited are pure accidents or idiopathic fall cases.

Larson gives the rule applicable in cases of this nature: "Assaults arise out of the employment either if the risk of assault is increased because of the nature or setting of the work, or if the reason for the assault was a quarrel having its origin in the work." (1 Larson, § 11.00.)

The Court of Appeals in *Matter of Brown* v. *New York State Training School* (285 N. Y. 37, 39) stated about awards in general: "An award of statutory compensation is sanctioned

by the Workmen's Compensation Law (Cons. Laws, ch. 67) only in the event of proof that the act which caused the disability or death of the employee was ' * * * one of the risks connected with the employment, flowing therefrom as a natural consequence and directly connected with the work.' (*Matter of Heitz* v. *Ruppert*, 218 N. Y. 148, 152)."

These basic propositions were the touchstones of this court's decisions in *Matter of McKeon* (*supra*) and *Matter of Lozupone* (*supra*).

The majority opinion, however, would have us disregard *McKeon* (*supra*) for two reasons. First, it is urged that we affirmed a factual determination of the board which disallowed the claim, but this has no substance because before both this court and the Court of Appeals there was nothing argued or presented except the question of law, exactly on all fours with the question herein, viz, whether compensation was available where an assault precipitated by an admittedly personal argument caused decedent to fall striking his head against a table and in turn resulting in a skull fracture and death. Secondly, they say that an affirmance without opinion cannot be said to have any judicial precedent or significance and cannot be ascertained or followed by the Bar. Of course, if this needs answering, suffice it to say — that an entire digest of the case together with the arguments pro and con before the board, Appellate Division and Court of Appeals is available widely throughout the State and, further, is on the desk of every lawyer of the Workmen's Compensation Bar worth his salt (Compensation Court Decisions furnished by the Workmen's Compensation Board) — and the entire record and briefs of each Appellate Division case, with opinion or without opinion, are available at the four Appellate Division offices, New York State Law Reporter, New York County Lawyers Association, State Law Library, Albany, Library of the New York Law Institute, New York and the Supreme Court Libraries at Binghamton, Utica and White Plains. It is common practice for these records to be requested and utilized almost daily by the Bar.

Factually, *Matter of Lozupone* v. *Liberty Fabrics* (*supra*) is even more compelling. There this court again affirmed the board's denial of an award because the fight which led to the assault and fall was personal despite the fact that *the fall was against an employer's machine*. Again, as in *McKeon*, the added risk theory based on the idiopathic fall cases was clearly urged by the claimant on the appeal and rejected by this court.

Beyond *McKeon* and *Lozupone*, it is abundantly evident that in the past we have clearly limited the added risk doctrine to

idiopathic falls. In *Matter of Hughes* v. *Acme Steel & Malleable Iron Works* (11 A D 2d 563) this court sent a case back to the board because it found no sufficient basis for the board's finding that the fall was accidental or that the fall from a height of only four inches presented an added risk of employment. In the course of its decision this court stated (p. 564): "In support of the award, the Attorney-General presents the additional argument that the platform four inches high 'constituted an extra hazard or risk of the employment which made it difficult or impossible for [claimant] to break the fall.' This was not, however, the basis of the board's decision, which rested upon the finding of a purely accidental fall, *while the added risk doctrine, of course, presupposes an idiopathic fall.* (See *Matter of Andrews* v. *L. & S. Amusement Corp.*, 253 N. Y. 97; *Matter of Connelly* v. *Samaritan Hosp.*, 259 N. Y. 137; *Matter of Dasaro* v. *Ford Motor Co.*, 280 App. Div. 266, mot. for lv. to app. den. 304 N. Y. 986.)" (Emphasis added.)

In *Matter of Hayman* v. *Kenberry Bake Shop* (12 A D 2d 532) where on affirming an award this court stated: "The findings that claimant fell from a cause other than the subarachnoid hemorrhage and that the latter was induced by his head striking the barrel *bring the case within the added risk doctrine applied in idiopathic fall cases of this nature.* (See, e.g., *Matter of Connelly* v. *Samaritan Hosp.*, 259 N. Y. 137.)" (Emphasis added.)

Since, to our knowledge, there are no cases in any jurisdiction which even hint that the exception pertaining to idiopathic falls should be extended to privately motivated assaults, it was necessary for the majority opinion to refer to a completely unsupported hypothesis advanced by Professor Larson in his treatise. In support of his position Professor Larson cites an extreme, once in a million years case of a man working on a highway who is wounded in the shoulder by a rifle shot directed by his personal enemy and as a result is caused to topple into a cement mixer on which he is working. Such extreme cases make bad law and his statement certainly is no legal precedent for us to follow.

The evolution of the idiopathic fall cases is itself interesting and should be referred to briefly. In *Matter of Barath* v. *Arnold Paint Co.* (238 N. Y. 625) a man suffered a seizure and fell from an elevated scaffold and in *Matter of Mausert* v. *Albany Bldrs. Co.* (250 N. Y. 21) an employee sustained a seizure on a wagon seat and then fell under the wheels. *Within the year* following *Mausert* the board had applied the exception to a seizure and fall on a level floor completely ignoring the basis

and reasoning of the exception. Some of the Justices of the Appellate Division did the same, but the Court of Appeals could not sit still for this and reversed (*Matter of Andrews* v. *L. & S. Amusement Corp.*, 253 N. Y. 97). There CRANE, J., wrote (pp. 99–100):

" Mausert, who was a teamster, fell from the seat of his truck to the pavement, the wheels passing over his body, causing death. He was in the course of his employment, and we held that his death arose out of his employment. The risk of falling from the seat of a truck and being injured was incident to and a risk of his employment. Every day that he was driving this truck there was the risk or danger that he might fall off, while careless or asleep, and be injured either by the horses, other vehicles or his own. This risk, we said in the opinion, would not surround him while sitting in a chair in his home, or upon the ground, or even while walking the streets. It was as a teamster that he incurred the risks. *Matter of Barath* v. *Arnold Paint Co.* (238 N. Y. 625), cited in the *Mausert* opinion, was another injury resulting from apoplectic stroke, the fall in that case being from a scaffold, causing a fractured skull. The conclusion there was that the risk or danger was one arising out of the employment because the loss of control through apoplexy while on a scaffold would result in a serious fall. The place of work increased the risk and danger from such an affliction.

" None of these added risks or dangers are found in the facts of this case. Andrews was on the sidewalk; he had not commenced his painting; he was walking with his co-employee to get a pail of water. The epileptic seizure caused him to fall to the sidewalk, striking his head and fracturing his skull. Where was there any added risk due to the employment? The same result might have followed if he had been coming to or going from his employment, or even in his own house, if he had fallen and struck his head on a chair, table or other hard substance."

Since that time the reason and basis of the rule has been forgotten or ignored by many courts. We now have Professor Larson discussing falls on two-inch rugs upon which factual situation he thinks courts in some jurisdictions will be constrained to make an additional extension, but he does not think it should logically be extended to one employed in a mattress factory who after a seizure falls " onto an 8-inch-thick, deluxe, innerspring mattress " (1 Larson, § 12.14, p. 192.18–192.19; but, see, Larson's discussion on page 12 of his 1965 supplement where he suggests it may not matter where the employee falls).

So to look ahead at where we are about to go; if we couple personal arguments and assaults to the idiopathic exception as

it has evolved, what about the case where the decedent is struck over the head with a chair which is on the employer's premises or with a slab of wood located there? Ridiculous you say? Well, read *De Nardis* v. *Stevens Constr. Co.* (72 N. J. Super. 395, affd. 38 N. J. 300 [1962]) where the weapon, a sledge hammer, was a tool of the employer and this fact was cited as one of the major circumstances connecting the situation with the employment and *White* v. *Whiteway Pharmacy* (210 Tenn. 449 [1962]) where it was argued that because the employee was killed by her husband in a marital dispute with a knife found on the employer's premises (a pharmacy-soda fountain) death was connected to employment.

So to use the words in the majority opinion, on "reason, logic and sound analogous precedent", and I should add on balance, it is my view that the exception to the general rule applicable to idiopathic falls should not be extended to privately-motivated, personal assault cases. The decision should be reversed and the claim dismissed.

TAYLOR, AULISI and HAMM, JJ., concur with GIBSON, P. J.; REYNOLDS, J., dissents and votes to reverse, in an opinion.

Decision affirmed, with costs to the Workmen's Compensation Board.