## American Beet Sugar Company v. Turk-Wilson Grocery Company.

(Decided February 21, 1919.)

### Appeal from McCracken Circuit Court.

Appeal and Error—Evidence.—The fact that the evidence in the case is conflicting or that this court would have found differently on the facts does not give or furnish cause or ground for setting aside the verdict. In this case but two witnesses testified on the main issue—one for appellant and one for appellee—so this court cannot say the verdict is against the weight of the evidence. Theories of both parties were submitted to the jury under proper instructions.

MOCQUOT & BERRY for appellant.

WHEELER & HUGHES for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

The appellant is engaged in the business of manufacturing and selling sugar. The appellee is engaged in the wholesale grocery business in Paducah. O. P. Leigh & Co. are brokers in the last named city, and Meinrath Brokerage Company is a brokerage concern located in Chicago.

July 12, 1916, a member of the firm of O. P. Leigh & Co. went to the office of the appellee and informed Mr. Wilson they could sell him beet sugar, to be delivered at Metropolis, Ills., at a given price. An order was given this brokerage firm for two cars of beet sugar, of 800 bags each, the order for each car being given at different times during the day.

It is claimed by appellee the sugar was not delivered at the time agreed upon, and the sugar market was down when the sugar was received. In sending a check to appellant, in settlement of the first car, appellee deducted $400.00, on account of the difference in the market price; in settlement of the second car it deducted $708.00

for the same reason, and $55.61 freight from Metropolis to Paducah.

Aside from the testimony of G. S. Scott, a member of the firm of O. P. Leigh & Co., relative to the order for the second car, only two witnesses testified in this case, to-wit: O. P. Leigh in behalf of the appellant (plaintiff below), and Rollie Wilson in behalf of appellee.

The broker's authority was given in a telegram of July 12, 1916, from the Meinrath Brokerage Company, which stated the price at which sugar was to be sold, shipments commencing about July 22nd, to the Illinois market.

Mr. Leigh testified that after the telegram, which was in code, had been deciphered, he showed it to Mr. Wilson, who read it, and thereupon gave him the order for the one car, and later, in telephone conversation with Mr. Scott, he gave the order for the second car. The conversation is thus related by Mr. Leigh: "Q. Tell the jury what happened when you went in and sold him this sugar? A. I went to Turk-Wilson and offered Mr. Wilson this sugar at a certain price of $7.47½ at Metropolis, the freight prepaid to Metropolis, to be shipped about the 22nd. Q. That was the trade, was it? A. Yes, sir. Q. To be shipped about the 22nd? A. Yes, sir. . . . Q. The American Beet Sugar Company to pay for it to Metropolis and Turk-Wilson to pay for it from there here, and it was to be shipped about the 22nd? A. Yes, sir. Q. Was anything said about when this sugar commenced to be manufactured? A. About the 22nd. Q. Was anything said between you and Wilson about when it was to be manufactured? A. I showed him this telegram."

Mr. Wilson states that when Mr. Leigh came to his office he had something in his hand, but it is not clear from his testimony whether or not he read the telegram. When asked about the contract with the appellant he states: "Mr. Leigh came in the store one morning early —in the early part of July—and walked up to the desk and said, 'Rollie, do you want to buy some beet sugar?' and I said, 'Yes, at what price?' and he said, '$7.47 per hundred,' and I said, 'It depends entirely on when it was to be shipped,' and he said, 'It would be shipped July 22nd, and would be $7.47 per hundred at Metropolis,' and I said I would take a car, and then late in the afternoon Mr. Scott rang up and said, 'We have confirmation

on the car of sugar, but the price is up; however, I think. I can get you another car at the same price.''

Thus it will be seen that the issue involved narrows. itself down to the contract made between the parties on the date mentioned; Mr. Leigh insisting that shipment was to be made on or about July 22nd, Mr. Wilson being just as emphatic in his statement that it should be shipped by the 22nd of July, i. e., to be shipped on that date and not later than that date.

The first car was shipped August 2, the second one in September. From the original correspondence, which is in the record, it appears that appellee wrote the appellant on July 18, asking that the order be scaled down to 800 bags, and this letter referred to the receipt of a memorandum No. 13 M., dated July 13, this being a memorandum of the sale of the sugar, providing for shipment as follows: ''800 bags as soon as possible after beginning factory operation, 800 bags as ordered within 30 days, seller's option of routing. Orders for shipment to be furnished by purchaser.''

In response to a circular letter from the Chicago brokers, dated July 25, 1916, asking for shipping instructions, appellee wrote the Chicago brokers stating that the sugar was bought with the distinct understanding that one car of it would move July 22nd, and as this car was not shipped appellee insisted that it be cancelled. This was before the first car was shipped. August 17th, and prior to the shipment of the second car, appellee notified the Chicago brokers, representing appellant, that as the remaining car was not shipped on the 22nd, appellee would pay for the sugar on the basis of 25c under the price of cane sugar, the day received. Appellee settled on this basis. In the voucher checks sent in payment of the two consignments there is this notation, ''The attached check is in full settlement of the items listed. Return if incorrect.''

After the proof was heard the case was submitted to the jury, the court giving two instructions—one tendered by the appellant and the other by the appellee. The jury returned a verdict in appellee's favor.

This court has written time and again that unless the verdict of the jury is flagrantly against the evidence the judgment will not be reversed. In this case there are but two witnesses testifying to the facts in issue, one on one side and one on the other.

The mere fact that the evidence is conflicting, or that this court would have found differently on the facts, or that in its opinion the verdict is against the weight of the evidence would give and furnish no cause or ground for setting it aside. Before this can be done it must be apparent that the verdict is clearly and palpably against the evidence. Such is not the case here. The jury was instructed upon both theories of the case and found the contract to be as claimed by appellee.

As there was sufficient evidence to carry the case to the jury upon the issues submitted, it is not within our province to interfere with or disturb the jury's verdict. White Sewing Machine Co. v. Mahoney, et al., 156 Ky. 805; Lou. & Int. R. R. Co. v. Roemmele, 157 Ky 84; Jellico Coal Mining Co. v. Walls, 160 Ky. 730; Interstate Coal Co. v. Garrard, by, etc., 163 Ky. 235; Miller's Admr. v. Ewing, Same 401; Forestal v. National Surety Co., et al., 168 Ky. 552.

Judgment affirmed.