JOSEPHINE JACKSON MIXON, PETITIONER-APPELLANT, v. AL KALMAN, TRADING AS CENTRAL WRECKING CO., DEFENDANT-RESPONDENT.

Argued February 6, 1945—Decided April 19, 1945.

For the appellant, *Albert N. Shahadi* (*Vincent S. Haneman,* of counsel).

For the respondent, *Bolte, Miller & Repetto* (*Augustine A. Repetto,* of counsel).

The opinion of the court was delivered by

HEHER, J. This is a proceeding under the Workmen's Compensation Act. *R. S.* 34:15–7, *et seq.* On July 29th, 1942, the workman was instantly killed by a bolt of lightning while in the course of his employment; and the question is whether, on the facts as found by the Supreme Court, the accident arose out of the employment within the purview of the statute. If it be resolved in the affirmative, there was error in matter of law in the Supreme Court's reversal of the judgment in favor of the deceased servant's dependents.

Defendant was then in the house-wrecking business; and for some eight years prior to the fatal mishap, the workman had been in his service as a laborer. The shaft of lightning struck the workman while he was engaged, at the direction of the master, in separating the sections of several lengths of four-inch soil pipe by burning the lead out of the joints. Rain fell during the storm. There was an open ground fire in an open storage yard in the possession of the master; and the burning of the lead was done by placing the pipe horizontally on the fire. A rake composed of metal tines and a wooden handle was used by the workman to remove the pipe from the fire. During the course of the storm, or shortly thereafter, he was found lying prostrate, with the rake in hand, ten or twelve feet from the fire. The hair "over his forehead" was burned; he was "slightly burned just over the stomach—just below the diaphragm;" and from there he "was burned down to the pubic arch." His lower right leg was burned "very slightly;" and his underwear had "multiple perforations," also caused by burns.

The evidence reveals a contrariety of scientific view as to whether these burns signify that the bolt struck the workman directly on the head or entered the body *via* the rake, with the metal tines and the wet handle serving as a conductor through contact with the metal pipes lying on the ground. The Supreme Court rejected the latter hypothesis. The finding was, in accordance with the expert opinion adduced by the master, that the electrical discharge struck the workman's head, and that neither the metal pipe nor the rake was a contributing factor. The court invoked the general rule of inter-

pretation that, unless the injured servant was, by reason of the employment, subject to a greater hazard than was common to those in the locality, the accident cannot be classed as one arising out of the employment. We are, of course, concluded by the findings of fact made by the Supreme Court in respect of these variant professional opinions. Appellant's counsel is in error in supposing, as he does, that the Supreme Court was bound by the factual conclusions of the Court of Common Pleas. On such reviews, the Supreme Court is also under a duty to find the facts. *Bollinger* v. *Wagaraw Building Supply Co.*, 122 *N. J. L.* 512; *Gilbert* v. *Gilbert Machine Works, Inc.*, 122 *Id.* 533; *Rubeo* v. *Arthur McMullen Co.*, 117 *Id.* 574; *Anderson* v. *Federal Shipbuilding and Dry Dock Co.*, 118 *Id.* 55. But it is fundamental that findings of fact made by the Supreme Court on conflicting evidence, or on uncontroverted evidence reasonably susceptible of divergent inferences, are not reviewable on error. *Lebits* v. *General Cable Corp.*, 112 *Id.* 381; *Kovalchuck* v. *Simpson & Brown*, 117 *Id.* 400.

Where the witnesses of proved experiential capacity differ as to scientific principles, and the deductions to be drawn from the circumstances, the subject-matter can hardly be said to be of such general scientific belief as to justify judicial notice. But we may reasonably assume the following as proved scentific truths: Natural lightning is the visible flash which accompanies an electric discharge between two clouds or between a cloud and the earth, usually to the earth. The discharge occurs through the pressure of accumulated electricity in the cloud; and it takes the shortest path to the ground. The discharge is to a projection above the earth's surface, rather than to the ground itself. This is the principle of the "lightning rod." Rain and certain "lightning conductors" discharge the electricity quietly to the earth. When the electrically charged cloud passes near another cloud or a projection from the earth, the electrical discharge takes place. And there was testimony, seemingly unchallenged, that where the "projection" is a man six feet tall, there is a "protected area around the point where he stands of some twelve feet radius," in which, "it is almost certain," nothing will be

struck. We accept this as the factual situation, as did the Supreme Court; and we are of the view that the fatality was the result of an accident which arose out of the employment.

Whether a given case is within the principle of the statute is often a very difficult question; and this is so here. The statutory formula will not automatically resolve every case. So far as we are aware, there is no case in this state which considers death or injury by lightning in relation to this provision of the Compensation Act; and we shall therefore have recourse to English case law, for the English Compensation Act is the prototype of ours. It is a mixed question of law and fact. The difficulty is not with the principle, but rather with its application to the particular circumstances.

An "accident," in the legislative view, is an unlooked for mishap or untoward event which is not expected or designed as respects the workman himself. And an accident arises out of the employment if it ensues from a risk reasonably incident to the employment, i. e., such as belongs to or is connected with what the workman has to do in the fulfillment of his contract of service. Such a risk may be either an ordinary one, directly connected with the employment, or one extraordinary in character, indirectly connected therewith because of its special nature. If the danger was one to which the workman was exposed because of the nature, conditions, or obligations of the employment, the accident arose out of the employment. The service is then a contributing proximate cause; the injury is traceable to a hazard of the employment. If the employment was one of the contributing causes without which the accident would not have happened, the statutory language is satisfied. These are settled principles of exposition in this state. *Geltman* v. *Reliable Linen and Supply Co.*, 128 *N. J. L.* 443.

It is not a conclusive test that the danger is common to all, whether in or out of the employment. A risk incident to the performance of the servant's work may include a risk common to all mankind. The peril may be normally incident to the service, and yet be one faced by members of the public; or it may be an abnormal risk and therefore incident to the performance of the work. Russell, L. J., in *Lawrence*

v. *George Matthews, Ltd.,* (1929) 1 *K. B.* 1, 18; Buckley, L. J., in *Pierce* v. *Provident Clothing and Supply Co., Ltd.,* (1911) 1 *Id.* 997, 1003. As respects collectors, canvassers, railway guards, and so on, risks of the streets and railway passenger transportation are examples of the first class. They are risks inherent in the nature of the employment; and it is quite immaterial that the danger is also one shared by members of the public. *Dennis* v. *A. J. White & Co.,* (1917) *A. C.* 479. Liability for accidents arising from the "ordinary risks of the streets and public places proceeds upon the ground that where in the course of the man's employment he has to incur the risks of such accidents, personal injury caused by them arises out of the employment." Sankey, L. J., in *Lawrence* v. *George Matthews, Ltd., supra.*

However, it has been the generally accepted rule, with certain qualifications, that where the accident is the result of the forces of nature, it is necessary to prove that the workman's position in the course of his employment specially exposed him to the general risk. In *Thom or Simpson* v. *Sinclair,* (1917) *A. C.* 127, 142, Lord Shaw says: "In short, my view of the statute is that the expression 'arising out of the employment' is not confined to the mere 'nature of the employment.' The expression, in my opinion, applies to the employment as such—to its nature, its conditions, its obligations, and its incidents. If by reason of any of these the workman is brought within the zone of special danger and so injured or killed, it appears to me that the broad words of the statute 'arising out of the employment' apply." Pointing out that "insurance" is the principle of the Compensation Act, Lord Parmoor observes: "The fact that the risk may be common to all mankind does not disentitle a workman to compensation if in the particular case it arises out of the employment. Any stranger walking along a road in a mine may be exposed to the risk of an accidental fall of coal, but this does not affect the claim of a miner who in the course of his duty, or to obtain access to his work, is unfortunately injured by such fall."

And in *Dennis* v. *A. J. White & Co., supra,* Lord Parker says: "In those cases where it is necessary to consider whether

a particular employment by its circumstances involves special liability to a risk which is in its nature general the contrast is between persons engaged in the particular employment or under the particular circumstances and persons not so employed or not so employed under the same circumstances. It is not between the injured workman and others doing the same thing under the same circumstances or the same conditions. When once it is manifest that what the workman is employed to do involves a particular risk, it almost necessarily follows that all who do what the workman is employed to do run the same risk; but this cannot, in my opinion, deprive the workman of his right to compensation under the act."

In England, a distinction has lately been made between injury resulting directly from the operation of natural forces and injury ensuing indirectly from a cause induced by some natural force—*e. g.*, where lightning knocks down a wall or a storm blows down a tree, and the wall or tree causes injury at any place to the workman. *Lawrence* v. *George Matthews, Ltd., supra.* There, a tree uprooted by a severe windstorm fell upon and killed a commercial traveler while he was going his rounds on a motorcycle; and it was held by the majority that in such a case the law is not concerned with "the remoter cause," but only with the fall of the tree. With regard to such street accidents, "locality" and the character of the causation are considered important factors. Russell, L. J., took this view, declaring that "By reason of the nature, conditions, obligations, or incidents" of the employment, the workman "was brought within the zone of special danger;" his employment "brought him to a danger spot, that is to say, a spot which had a quality which resulted in danger; the lurking danger was the tree. The danger materialized, that is to say, the tree fell. The cause of the fall is immaterial and irrelevant. The falling tree caused injury to him; this was an accident which arose out of his employment." But Lord Hanworth was unable to see any force or logic in this distinction. In a dissent he said: "Such an incident can occur, but only if the forces of nature are exercised upon the tree, and to such a mishap all persons in the locality are liable."

Thus, where the forces of nature indirectly produce a street risk, the accident is within the statute. But is this sound differentiation? Was not the occurrence, after all, in essence an accident attributable solely to the windstorm? The place was not dangerous in itself. It was the violent uprooting of the tree that gave rise to the danger. The storm was the sole proximate cause of the mishap. It was not an ordinary risk of the streets. The case suggests a modification of the "common risk" doctrine, as applied to natural forces, that is more in consonance with the spirit of the statute—a refinement that serves to point the hazards of broad generalization as regards exclusions from a statutory category that is itself defined in terms of wide signification.

Certainly, the peril arising from the particular employment was beyond the normal or common risk. The deceased servant was obliged to remain at his post of duty, for a suddenly arising wind, characteristic of thunderstorms, might scatter the sparks and embers and thus menace the security of his master's property and buildings and chattels on the contiguous lands. At least, it is fairly inferable that, notwithstanding the gathering clouds, he conceived it to be his duty to remain at his station in the master's interest; and, in view of the fire hazard, how can it reasonably be said that he was not thereby pursuing his employment? The master would be liable for his negligence in the management of the fire; and fidelity to the master's welfare was indubitably within the scope of the employment. The servant was by reason of the demands of his employment placed at a disadvantage in protecting himself from the danger. Compare *George Anderson & Co., Ltd.,* v. *Adamson,* 50 *S. L. R.* 855; 6 *B. W. C. C.* 874. It is common experience that those outdoors generally seek shelter, against both rain and lightning, as a thunderstorm approaches; but here the deceased servant's freedom of action for self-protection was circumscribed by the conditions of his employment. Because of the nature of his duties under the employment, he was subjected to more than the ordinary risk of a lightning stroke. The extra danger was inseparable from the line of duty. He could not fully discharge the obligations of the employment without incurring this risk. Such is the

*ratio decidendi* of the case of *North Wildwood* v. *Cirelli,* 129 *N. J. L.* 302; *affirmed,* 131 *Id.* 162, where an ocean-beach lifeguard suffered a fatal injury from the bite of an insect. And the same principle is applicable to the frost-bite and sunstroke cases. *Ciocca* v. *National Sugar Refining Co.,* 124 *Id.* 329.

In the Scottish case of *George Anderson & Co., Ltd.,* v. *Adamson, supra,* Lord Johnston said: "But if the position which the workman must necessarily occupy in connection with his work results in excessive exposure to the common risk, or if the continuity or exceptional amount of exposure aggravates the common risk, then it is open to conclude that the accident did not arise out of the common risk but out of the employment." In the case of *Andrew* v. *Failsworth Industrial Society,* (1904) 2 *K. B.* 32, a bricklayer was killed by lightning while working on a scaffold twenty-three feet from the ground, on a building in the course of construction thirty-eight feet in height; and, in sustaining an award of compensation, Collins, M. R., adopted this statement of the applicable rule of law by the county court judge: "Though it (the accident) may not be connected with, or have any relation to, the work the man was doing, yet, if in point of fact the position in which the man was doing the work, and the place he must necessarily occupy whilst doing the work are a position and a place of danger which caused the accident, it may fairly be said that it arose out of the employment, not because of the work, but because of the position. * * * Was the man exposed to something more than the normal risk, which everybody, so to speak, incurs at any time and in any place during a thunderstorm? We know that lightning is erratic, and possibly no position or circumstances can afford absolute safety. But, if there is under particular circumstances in a particular vocation something appreciably and substantially beyond the ordinary normal risk, which ordinary people run, and which is a necessary concomitant of the occupation the man is engaged in, then I am entitled to say that the extra danger to which the man is exposed is something arising out of his employment * * *." In this case, evidence was adduced from an electrician that the workman, in his posi-

tion on the scaffold, "would constitute a well-defined point at which a discharge would be more likely to occur," and that "buildings and other erections afford protection over a space which diminishes as you ascend vertically." Do not the circumstances in the case at hand indicate an equally dangerous exposure? Elevation on a scaffold is not necessarily significant of a special exposure to lightning. It depends upon the surroundings. The event here proves that, as in the last cited case, the workman constituted "a well-defined point at which a discharge would be more likely to occur." Indeed, the accepted opinion evidence reveals that by reason of his erect position necessary for the performance of his work, the particular workman served as a point of concentration for the electrical discharge, even though there were buildings hard by. In the words of Lord Haldane, in the case of *Thom or Simpson* v. *Sinclair, supra,* the employment gave rise "to the circumstance of injury by accident;" and the statutory condition is met.

In the case of *Madura* v. *City of New York,* 238 N. Y. 214; 144 N. E. Rep. 505, the Court of Appeals of New York sustained an award of compensation where a park laborer sought shelter under a tree during a thunderstorm and was there killed by lightning, on the theory that it was a scientific fact of common knowledge that "a wet tree is a ready conductor of a current of electricity," and "a person standing under such a tree is exposed to a degree of danger which does not confront one in the open spaces of a highway or field." In England, an "added peril" due to the conduct of the servant himself is not considered a risk incident to the employment. *Plumb* v. *Cobden Flour Mills,* (1914) A. C. 62, 68. We think the evidence here makes it clear that the peril of lightning may be as great in an open field as under a tree, depending upon the physical character of the location and the circumtsances.

We conclude that, by reason of his employment, the servant here was specially exposed to the risk of the accident which befell him, and the mishap therefore arose out of the employment.

The judgment of the Supreme Court is reversed; and the

judgment of the Atlantic Common Pleas, affirming the judgment of the Compensation Bureau in favor of appellant, is affirmed.

*For affirmance*—PARKER, WELLS, JJ. 2.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, BODINE, HEHER, PERSKIE, COLIE, RAFFERTY, THOMPSON, DILL, JJ. 9.