30 N.J. Super. 353 (1954)
104 A.2d 720
HAROLD HENDERSON, PETITIONER-APPELLANT,
v.
CELANESE CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued March 8, 1954.
Decided April 28, 1954.
*355 Before Judges EASTWOOD, JAYNE and CLAPP.
Mr. Mortimer Wald argued the cause for the petitioner-appellant (Messrs. Kapelsohn, Lerner, Leuchter & Reitman, attorneys).
Mr. Isidor Kalisch argued the cause for the defendant-respondent (Mr. Stanley U. Phares, attorney).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
The issue in this appeal is whether the resulting injury of an idiopathic fall on a concrete floor at appellant's place of employment is compensable.
There is no factual dispute. The petitioner had been a sufferer from epilepsy for a number of years. It is conceded that on the day in question he had a seizure which caused him to fall to the concrete floor in the plant, striking his head thereon, as the result of which he suffered a cerebral concussion. There is no evidence, nor does the employee contend, that the seizure was in any way caused by his employment. His position is that the concrete floor of the plant was a hazard of his employment; that it contributed to his injuries and the accident is, therefore, compensable.
The Deputy Director, Division of Workmen's Compensation, held that the claimant had suffered a compensable injury. On appeal, the Essex County Court reversed and found the petitioner's injuries to be non-compensable. 27 N.J. Super. 219 (Law Div. 1953). It is from the County Court's judgment this appeal stems.
The appellant contends that the concrete floor was a risk peculiar to his employment and that as such it produced a hazard which contributed to his injury regardless of the moving cause of the injury. It is argued that rulings in accord with his contentions are found in the English courts and that the philosophy of those courts has traditionally been *356 followed by our courts in workmen's compensation matters, and further, that there is support for his views in the holdings of other jurisdictions in this country.
The defendant contends that the petitioner failed to establish by a preponderance of the evidence that he suffered a compensable accident; that the concrete floor in defendant's plant was not a hazard of employment; that the fall was not a risk incident to petitioner's employment, and that his fall and consequent injuries were unconnected with his duties or services as an employee.
The compensability of injuries sustained as the result of an accident or untoward incident has, under our workmen's compensation legislation and decisions, been held to depend upon the affirmative finding that the accident which produced the injuries arose out of and during the course of employment. It has long been the holding that both factors must be answered in the affirmative to warrant an award. Bryant v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913); Hulley v. Moosbrugger, 88 N.J.L. 161 (E. & A. 1915); Colucci v. Edison Portland Cement Co., 94 N.J.L. 542 (E. & A. 1920).
Authorities are in general agreement that an injury arises out of employment when, but only when, there is a causal connection between such injury and the conditions under which the work is required to be performed; that it is not sufficient in itself that the employee is at the place of employment at the time of the accident and performing his duties. In addition, it has been stated that it is an accident arising out of employment if it ensues from a risk reasonably incident to the employment, and if it is in some sense due to the employment. 58 Am. Jur., sec. 212, p. 720; Geltman v. Reliable Linen & Supply Co., 128 N.J.L. 443 (E. & A. 1942). As stated by our Supreme Court recently in the case of Robertson v. Express Container Corp., 13 N.J. 342, 345 (1953):
"The test defining when an accident arises in the course of the employment was laid down in Bryant v. Fissell, 84 N.J.L. 72 (Sup. Ct. 1913), and has since been consistently followed. It was *357 there stated `* * * an accident arises "in the course of the employment" if it occurs while the employee is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time * * *. A risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service. * * * And a risk may be incidental to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment.' In Beh v. Breeze Corporation, 2 N.J. 279, 282 (1949), we stated:
`There must be a causal connection between the condition under which the work is required to be done and the resulting injury. That injury must have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.'"
There is not any dispute about the petitioner's injuries being sustained during his employment in the sense of the hours of employment, and on the employer's premises, but there is no contention that the incident occurred during the performance of any task of employment. In fact, the employee concedes that at the time of the epileptic seizure he was doing nothing that was connected with his employment or which caused or brought about the seizure and admits that the seizure itself was the sole cause of his fall.
Whether or not injuries sustained by employees in falling are regarded as arising out of the employment depends generally upon whether the risk of injuries from such fall is one reasonably incident to the employment, and that question must be determined in the light of the facts and circumstances of each case. 37 A.L.R. 771. Where the conditions of the employment involve the risk of injury from falling as, for example, where work is required "* * * to be done upon a scaffold, or near the edge of a hatchway, or upon the driver's seat of a cab, or in close proximity to a furnace or other dangerous agency, an injury so received is compensable, notwithstanding the fall may have been caused by a sudden attack of sickness or by a pre-existing infirmity or disorder. * * * According to some authorities, however, where the fall results from a sudden seizure or a pre-existing *358 infirmity or disorder, the resultant injury cannot be considered as arising out of the employment, even though it may have been accentuated by particular conditions under which the work was being performed." 58 Am. Jur., Workmen's Compensation, sec. 271, p. 772; Rockford Hotel Co. v. Industrial Commission, 300 Ill. 87, 132 N.E. 759, 19 A.L.R. 80; Cox v. Kansas City Refining Co., 108 Kan. 320, 195 P. 863, 19 A.L.R. 90.
All through the cases holding as compensable idiopathic falls onto dangerous objects, falls from heights and falls on level floors, there is present the requirement that employment conditions contributed some hazard which led to the final injury. We are not prepared to accept the contention that, in the absence of special condition or circumstance, a level floor in a place of employment is a hazard. Rather, we look upon a floor as a surface or plane about or over which one travels in all facets of his daily life, occupational and non-occupational, and the presence of special perils in that surface depends upon the existence of unusual conditions of which rigidity or firmness is not, in our opinion, such a peril.
Hardness is a comparative thing and difficult of definition and more elusive in application to a rule which would impose liability or penalty where it was found to be a factor in the injury of one who, by reason of solely a personal circumstance or condition, came in contact therewith. Hardness or firmness alone does not present such an unusual condition or special circumstance as to constitute a special peril to body contact therewith by a person working in close proximity thereto. We have noted specifically that concrete floors have not been held to be a hazard of employment per se, entitling one suffering an idiopathic fall and injury to compensation.
In Stanfield v. Industrial Commission, 146 Ohio St. 583, 67 N.E.2d 446, 448 (Sup. Ct. 1946), it was stated:
"* * * In the instant case the floor was in no sense an added risk or hazard incident to the employment. The decedent's head simply struck the common surface upon which he was walking  an experience that could have occurred to him in any building or on the street irrespective of his employment. * * *" *359 In Cinmino's Case, 251 Mass. 158, 146 N.E. 245, 246, 37 A.L.R. 769 (Sup. Jud. Ct. 1925), the court held:
"* * * The only question is whether the injury which resulted from the described impact of the head with the concrete floor was a risk and hazard of the employment; or, otherwise expressed, was there a causal connection between the conditions under which the work was to be performed and the injury which resulted. * * *
We think there is no measurable distinction between the hazard of an employment where the floors are made of concrete and an employment where the floors are of hard wood, of soft wood, or of dirt, because of the fact that one material is of greater or less resiliency than another. To hold that a concrete floor in a place of employment is a danger which effects the risks which an employee encounters and is a hazard which arises out of an employment, would require a further holding, when the occasion arose, that any flooring of any material is a hazard of employment against which the statute gives compensation whenever there is a causal relation between the hazard and the injury. The causal relation in such a case is too remote and speculative for practical application. * * *"
Cf. Remington v. Louttit Laundry Co., 77 R.I. 185, 74 A.2d 442 (Sup. Ct. 1950); Andrews v. L. & S. Amusement Corporation, 253 N.Y. 97, 170 N.E. 506 (Ct. App. 1930); Rozek's Case, 294 Mass. 205, 200 N.E. 903 (Sup. Jud. Ct. 1936).
Recently, in the case of Spindler v. Universal Chain Corp., 11 N.J. 34 (1952), our Supreme Court spoke of the compensability of injuries resulting from falls and stated, at page 39:
"Here the fall resulting in the injury is not disputed. The difference of opinion centers in the cause.
If it was occasioned by or was the result of a disease or physical seizure and was not contributed to by `what the workman had to do,' it is not compensable. On the other hand, if the fall `would not have occurred but for the services rendered' in the employment, it is covered by the statute."
In the Spindler case, supra, the court specifically held that the employee did not fall because of disease or infirmity, but by reason of some activity associated with her employment and it was on that basis that an award was made to her.
Under the facts of the matter sub judice, it is admitted that the cause of the fall was plaintiff's disease or physical *360 seizure and that at the time the plaintiff was doing nothing that was connected with his employment which caused or brought about the seizure.
In Eggers v. Industrial Commission, 157 Ohio St. 70, 104 N.E.2d 681, 684 (1952), the Supreme Court of Ohio commented on recovery of a claimant injured in a fall due to disease or infirmity and stated:
"There is no evidence in this case on which a jury could find that Eggers' head struck the `housing' or anything else when he fell. In the absence of such evidence it must be assumed that his head was cut when it hit the floor.
The facts of this case do not bring it within the scope of Industrial Commission v. Nelson, supra [127 Ohio St. 41, 186 N.E. 735] where the workman was seized with an epileptic fit which caused him to fall and in falling his head struck the corner or steel base of a large spot welding machine at which he was then working. There it could be said that the fall, though due to a cause not related to the employment, would not have carried the consequences it did except for the presence of machinery which was a circumstance incident to his employment. That reasoning cannot be applied to the facts of the instant case."
To constitute a risk incidental to employment the instrumentality alleged to have produced or contributed to the injuries complained of would have to be connected in some manner with what the workman had to do in fulfilling his contract of service. Beh v. Breeze Corp., 2 N.J. 279 (1949); Spindler v. Universal Chain Corp., supra.
"The word `incident' contains an element of the usual and reasonable, both as to the needs to be satisfied and as to the means used to satisfy them. If either is extraordinary, the action is no longer viewed as incidental." Larson, Workmen's Compensation Law (1951), p. 323.
The judgment is affirmed.
CLAPP, J.A.D. (dissenting).
The issue before us is whether we have here an "accident arising out of * * * employment." N.J.S.A. 34:15-7. An accident, it has been repeatedly stated, is an unlooked-for mishap. As Justice Heher has said in a dissenting opinion, the criterion raised by the statute is met if "either the cause or the result is *361 unexpected"  that is, if either the circumstance causing the injury or the result on the employee's person is unlooked for. See his opinion in Neylon v. Ford Motor Company, 8 N.J. 586, 594 (1952), which opinion was followed in D'Amico v. General Electric Supply Co., 22 N.J. Super. 199 (App. Div. 1952), affirmed 12 N.J. 607 (1953). In accord see 1 Larson, Workmen's Compensation (1952), § 37.20. In the instant case, both the circumstance causing the injury (the striking of the floor) and the consequence upon the employee's person were unexpected.
Beyond all dispute, there was an accident, within the intendment of the act, in each of the following cases: Reynolds v. Passaic Valley Sewerage Comm'rs, 130 N.J.L. 437 (Sup. Ct. 1943), affirmed 131 N.J.L. 327 (E. & A. 1944), where an employee, as a result solely of an epileptic seizure, fell against a hot stove and was injured; Freedman v. Spicer Manufacturing Corp., 97 N.J.L. 325 (E. & A. 1922), where an employee became dizzy as a result of an inoculation recommended by the employer and fell to the floor fracturing his skull; and Hall v. Doremus, 114 N.J.L. 47 (Sup. Ct. 1934), where an employee watching a cow in parturition was so overcome as to faint and, as a result, fell to the concrete floor, fracturing his skull. In the instant case, it seems clear, the accident, an unlooked for event which was productive of an unlooked for injury, was the impact of the employee's head with the concrete floor at the plant.
The issue before us thus reduces itself to this: was the impact with the plant's concrete floor a matter arising "out of" the petitioner's employment. A shroud of interpretations has been hung on this simple preposition by some courts, and their views should be looked at askance. In my respectful opinion, it will be found that the majority here in defining these prepositional words has accepted a test novel to New Jersey and contrary to such indications as there are of a general governing principle in this State, a test that represents the older view elsewhere, standing, as it does, in opposition to the trend of the law and indeed a test that now finds support only in a minority of the authorities.
*362 It may be clarifying, first, to state the case in the abstract. The rationale of the authorities of other jurisdictions relied upon in the majority opinion is that "an injury arises out of the employment only when it arises out of a hazard peculiar to or increased by that employment, and not common to people generally." 1 Larson, supra, § 6.20. "In the past * * * most courts" (see 1 Larson, supra, § 6.20) have held to this as the rule by which the question of causation was to be resolved in all sorts of cases.
However in my opinion New Jersey has rejected this as a general governing principle. Under the general rule in this State (an exception is held to exist in the case of an accident caused by lighting, an act of God or a force of nature. See 1 Larson, supra, § 8.00), "a risk incident to the performance of the servant's work may include a risk common to all mankind. The peril may be normally incident to the service, and yet be one faced by members of the public." Mixon v. Kalman, 133 N.J.L. 113 (E. & A. 1945). Compensation is due if this employment exposed the servant to the risk, regardless of whether he would have encountered the same risk out of the employment.
As pointed out in the Mixon case, the English courts in connection with a street accident (like the New Jersey courts, but unlike courts of some states) are not concerned with the question whether the hazard was increased by or was peculiar to the employment. Early in the development of our law on the matter, Zabriskie v. Erie R. Co., 86 N.J.L. 266 (E. & A. 1914), resolved that matter with this simple observation: "it was not the danger of an ordinary member of the public crossing a street on his own business, but was the subjection of the employee to that danger by the conditions of the employment." 1 Larson, supra, § 9.10. So here it was not the danger of an ordinary member of the public falling on his concrete cellar floor, but was the subjection of the employee to (what the majority here conceives to be) an equal danger by the conditions of his employment.
Again, as was held in Geltman v. Reliable Linen & Supply Co., 128 N.J.L. 443 (E. & A. 1942), relying upon a statement *363 by Lord Finlay, "`There is nothing in the Act about any necessity for showing that the employment involves an extra or special risk.'"
Indeed, as the very opinion of the majority notes  and this has been repeated a number of times in our reports  where the court is dealing with an ordinary risk (and falling on the floor is certainly an ordinary risk, even though it is brought about by a physical ailment), the test is not whether the injury arises out of a hazard increased by or peculiar to the employment, but simply whether it is "directly connected with the employment." Robertson v. Express Container Corp., 13 N.J. 342 (1953). And it is so connected (Beh v. Breeze Corporation, 2 N.J. 279 (1949)) if there is "a causal connection between the condition [here the concrete floor at the plant] under which the work is required to be done and the resulting injury." Only when there is "an extraordinary risk," such as that attributable to lightning and other forces of nature, are we concerned with "the special nature of the employment," Robertson v. Express Container Corp., supra; only then do we have to deal with the question whether the hazard was increased by or was peculiar to the employment. Mixon v. Kalman, 133 N.J.L. 113 (E. & A. 1945), supra.
Under the general rule clearly laid out in Gargiulo v. Gargiulo, 13 N.J. 8 (1953), an injury arises out of the employment if it would not have occurred but for the fact that the conditions of the employment placed claimant in the position in which he was injured.
Spindler v. Universal Chain Corp., 11 N.J. 34 (1952), was deemed by the court below to be dispositive of the case and is relied upon by the majority here. Surely that case did not overrule all the above law. In that case it was said that "if [a fall] was occasioned by * * * a * * * physical seizure and was not contributed to by `what the workman had to do,' it is not compensable." The words "by `what the workman had to do'" refer not alone to his activity, to the doing of something, as distinguished from the conditions of his employment. Indeed, as indicated in the majority opinion here, the courts in practically all jurisdictions would *364 find themselves in accord with Reynolds v. Passaic Valley Sewerage Comm'rs, 130 N.J.L. 437 (Sup. Ct. 1943), affirmed 131 N.J.L. 327 (E. & A. 1944), cited above. In that case, a fall against a hot stove was occasioned by an epileptic seizure and was held to be an accident arising out of the employment. The fall there was "not contributed to by `what the workman had to do'"; however the accident  the impact with and the burning by the stove  was contributed to by a condition of the employment. Of course, that case was not overruled by the Spindler case. The argument may be pressed at a number of points, but the matter does not warrant the discussion; in my respectful opinion the interpretation put upon the Spindler case seems clearly not the one intended. Justice Wachenfeld, who wrote the Spindler opinion, also wrote the opinion in Gargiulo v. Gargiulo, supra. The injury in that case was caused by an arrow; it palpably was not caused by what the workman had to do, but by a condition or circumstance to which he was subjected by what he had to do.
So much for the New Jersey law. Dean Larson (1 Larson, supra, p. 166) cites Lander v. British United Shoe Machinery Co., 102 L.J. (K.B.) 768 (C.A. 1933), as supporting the view espoused by the majority here. But that case was overruled in Wilson v. Chatterton [1946], 1 K.B. 360 (C.A.), in these blunt words: "Lander's case should now be treated as bad law." Although Wilson v. Chatterton is distinguishable on its facts, Lander's case is not. Other cases supporting the view adopted in this dissent are: Wright & Greig, Ltd. v. M'Kendry, 56 S.L.R. 39, 11 B.W.C.C. 402 (Scotch Ct. of Sessions 1919); New Amsterdam Casualty Co. v. Hoage, 61 App. D.C. 306, 62 F.2d 468 (C.A.D.C. 1932)  certiorari denied 288 U.S. 608, 53 S.Ct. 400, 77 L.Ed. 982 (1933)  a dictum, but the case is significant, for the court there abandoned the doctrine that to recover under the act, there had to be a risk increased by the employment; Employers Mutual Liability Ins. Co. v. Industrial Acc. Com'n., 41 Cal.2d 676, 263 P.2d 4 (Sup. Ct. 1953), a well-considered case, reversing the first case (253 P.2d 737, 738 [Cal. App. 1953]) *365 relied upon by respondent here in its brief (the lower California court had held  and its holding points up the issue  that an accidental injury does not arise out of employment if it arises because of an idiopathic fall on a cement floor, a "condition * * * which the general public encounters daily at places other than places of employment [a condition], and is therefore not peculiar to the employment"); Savage v. St. Aeden's Church, 122 Conn. 343, 189 A. 599, 601 (Sup. Ct. Err. 1937), a case precisely in point, wherein it was said:
"The risk may be no different in degree or kind than those to which he may be exposed outside of his employment. The injury is compensable, not because of the extent or particular character of the hazard, but because it exists as one of the conditions of the employment;"
Protectu Awning Shutter Co. v. Cline, 154 Fla. 30, 16 So.2d 342 (Sup. Ct. 1944); American Mut. Liability Ins. Co. v. King, 88 Ga. App. 176, 76 S.E.2d 81 (Ct. App. 1953), citing United States Casualty Co. v. Richardson, 75 Ga. App. 496, 43 S.E.2d 793 (Ct. App. 1947); Burroughs Adding Machine Co. v. Dehn, 110 Ind. App. 483, 39 N.E.2d 499 (App. Ct. 1942); but see Pollock v. Studebaker Corp., 230 Ind. 622, 105 N.E.2d 513 (Sup. Ct. 1952), abiding by a policy to follow the findings of the Industrial Board and therefore superseding 97 N.E.2d 631 (App. Ct. 1951); Barlau v. Minneapolis-Moline Power Implement Co., 214 Minn. 564, 9 N.W.2d 6 (Sup. Ct. 1943); Rewis v. New York Life Ins. Co., 226 N.C. 325, 38 S.E.2d 97 (Sup. Ct. 1946); De Vine v. Dave Steel Co., 227 N.C. 684, 44 S.E.2d 77 (Sup. Ct. 1947); Garcia v. Texas Indemnity Ins. Co., 146 Tex. 413, 209 S.W.2d 333 (Sup. Ct. 1948); General Ins. Co. v. Wickersham, 235 S.W.2d 215, 218 (Tex. Ct. Civ. App. 1951), a well reasoned case, precisely in point, wherein it was said:
"The cases denying compensation do so on the theory that a floor presents no risk or hazard that is not encountered everywhere, and that such risks and perils as they do present are only those which *366 confront all members of the public. The cases allowing compensation do so on the theory that the injury need not be the product of a peril or hazard which exposes the employee to extraordinary risk, in order to be compensable."
Horowitz, The Litigious Phrase: "arising out of" Employment, 4 Nacca L.J. 19, 67 (1949). Pennsylvania and Utah cases in accord on their facts are, however, distinguishable by reason of the differences in the applicable statutes.
The cases cited in the majority opinion are from New York, Massachusetts, Ohio and Rhode Island. In the Ohio case, two judges dissented. In Andrews v. L. & S. Amusement Corporation, 253 N.Y. 97, 170 N.E. 506 (Ct. App. 1930), Judge O'Brien wrote a strong dissenting opinion in which Cardozo, C.J., concurred. The unsatisfactoriness of the New York rule is demonstrated by Connelly v. Samaritan Hospital, 259 N.Y. 137, 181 N.E. 76 (Ct. App. 1932), holding that a fall against a table, as distinguished from a fall on the floor, is a fall within a zone of special danger.
Likewise Massachusetts seems to look upon things other than the floor as a "special danger." See Varao's Case, 316 Mass. 363, 55 N.E.2d 451 (Sup. Jud. Ct. 1944), where there was a fall against a motor box. Moreover, where a concrete floor contributes to the injury as in Cinmino's Case, 251 Mass. 158, 146 N.E. 245, 37 A.L.R. 769 (Sup. Jud. Ct. 1925), a case like ours, it is said to have had but "a passive part in the injury." Caswell's Case, 305 Mass. 500, 26 N.E.2d 328, 330 (Sup. Jud. Ct. 1940). Whereas when an epileptic falls down stairs, he is entitled to compensation (Cusick's Case, 260 Mass. 421, 157 N.E. 596 (Sup. Jud. Ct. 1927)), doubtless on the theory that the stairs are active.
In my view, the question should be whether the impact here with the concrete floor was due to a condition of the employment  that is, whether it was a risk of this employment. Since clearly it was, compensation is due. The rule is as simple as that. Dean Larson, early in his work, speaks of the merit of this rule, referring to it as "more defensible" than that rule (the rule adopted by the majority here) by which an accident is deemed not to have arisen out of the *367 employment unless it springs from a hazard increased by the employment. 1 Larson, supra, § 6.30. Yet when he comes to consider the case of an employee falling on a concrete floor because of an idiopathic seizure, he neglects these, his own views, stating apparently that recovery should not be allowed when "the employment * * * reduces [the hazard] below what it would be in [a] * * * nonemployment setting." 1 Larson, supra, p. 164.
Is there to be one test in a case where the injury springs in part from a circumstance of the employment and in part from a personal ailment; and another test where the injury springs in part from a circumstance of the employment and in part from a condition unrelated either to the person of the claimant or to the employment (as the case of the arrow, Gargiulo v. Gargiulo, supra)? And if so, why? The words of the statute do not warrant two tests. In neither case do they authorize the setting up of a requirement that there must be something more hazardous in the circumstances of the employment than what one usually meets with in other circumstances. To set up such a requirement constitutes, as it seems to me, an attempt to write into the terms of the statute a condition not to be found there, and therefore a piece of judicial legislation. It is not for a court to create an exception to the statute because of falls on a level floor; that is legislative business. I see no basis for extending the "forces of nature" exception above alluded to (see 1 Larson, supra, § 8.00); that exception seems to be limited to acts of God or "extraordinary risks" of which, as above observed, this is not one.
I might observe in passing  no one questions it  that when employment and a personal ailment or disability concur to produce an injury, the injury arises out of the employment; the employment need not be the primary cause, but need only contribute to the injury. Fox v. City of Plainfield, 10 N.J. Super. 464 (App. Div. 1950); Hall v. Doremus, 114 N.J.L. 47 (Sup. Ct. 1934), supra; Lohndorf v. Peper Bros. Paint Co., 134 N.J.L. 156 (Sup. Ct. 1946), affirmed 135 N.J.L. 352 (E. & A. 1947); Reynolds v. Passaic Valley *368 Sewerage Comm'rs, 130 N.J.L. 437 (Sup. Ct. 1943), affirmed 131 N.J.L. 327 (E. & A. 1944), supra; Wilson v. Chatterton [1946], 1 K.B. 360 (C.A.), supra. The test is simply whether the accidental injury was in a substantial part brought about by the conditions of the employment.
It might be helpful to notice those situations, the mere statement of which seem to Dean Larson, by a reductio ad absurdum, to demolish all argument  such situations as where an employee because of an epileptic seizure falls on a heavily carpeted floor and breaks an arm. Such cases may be resolved quite as satisfactorily by the test advanced here, namely, was the injury in fact produced in part by a condition of the employment, that is, by an impact with the surface of the floor on which he was required to perform his labor. 1 Larson, supra, § 12.14. If one may speculate on the matter, the courts possibly have themselves much to blame in this regard; for in defining the phrase "out of" employment, they have asked themselves whether the accident was a risk incidental to the employment, and thereby have injected into the statute an ambiguous definitional word. The word "risk" sometimes suggests an extra-hazardous matter. So we say of a venture that it is "risky." However, the fact is we are concerned merely with the question whether the accident was caused in part by the employment. If it was so caused, it was, without more, a risk incidental to the employment.
However, even if the "increased risk" doctrine is accepted, it must be conceded, as Dean Larson does (though with obvious reluctance. 1 Larson, supra, p. 165), that to a victim of epilepsy the chance of injury is augmented when he works while standing on a concrete floor. Certainly so, as compared with sitting down outside of employment or lying in bed, or even as compared with standing on a carpeted floor at his home. Suppose an employee works 40 hours a week on a concrete floor in a plant and stands or walks on a sidewalk, asphalt pavement and a concrete cellar, perhaps two out of the remaining 128 hours allotted him by *369 the clock. Has not the danger from a fall been increased twenty-fold by the employment?
So, in my view, upon the "actual risk" theory, the accidental injury here, clearly, was attributable in a substantial part to one of the conditions of employment, the concrete floor. However, even accepting the "increased risk" theory, I find that the employment probably increased the risk. Upon either theory, in my opinion, the County Court should be reversed and the Workmen's Compensation Division's determination sustained.