384 P.2d 885

**Charles Edward LUVAUL, Plaintiff-Appellant,**

v.

**A. RAY BARKER MOTOR COMPANY, Employer, and Pacific Employers Insurance Company, Insurer, Defendants-Appellees.**

**No. 7214.**

Supreme Court of New Mexico.

Aug. 26, 1963.

Sheehan, Duhigg & Christensen, Albuquerque, for appellant.

Key, Cohen & May, Albuquerque, for appellees.

CHAVEZ, Justice.

Appellant, claimant below, filed suit under the Workmen's Compensation Act, alleging that on or about November 21, 1960, while in the course of his employment by employer, A. Ray Barker Motor Company, he suffered injuries by accident arising out of his employment. The employer answered, denying the claim. The cause was heard by the trial court, without a jury, and judgment was entered for employer. Claimant appeals.

Claimant, an automotive mechanic, 36 years of age, had been employed by employer for a little over two years at the time of his injury. On Monday morning, November 21, 1960, claimant commenced the installation of a metal Jeep top. He did not complete the work by noon so he went to lunch. Upon returning from lunch, he completed the job and had "a sort of dizzy spell." He got a drink of water and then commenced repairing the wiring on a car. He had to get underneath the dashboard, had his feet on the seat and his back shoulders and head on the floor of the car. He worked in this position for fifteen or twenty minutes, completed the repairs and then went to the tool box to put his tools away. Claimant testified:

"A. * * * I walked about two steps some away from the tool box and that is the next thing I knew, why, I was woke up and I was on the floor * * *."

Claimant also testified that, while he was repairing the wiring, a mechanic named Lon

Smiley was working in the opposite stall on another automobile with the engine running and exhaust fumes blowing out of the tail pipe. He further testified that exhaust fumes were blowing into the open door of the car he was working on for "a good four or five minutes." The evidence shows that the opposite stall is across the aisle from where claimant was working and there is a space between the stalls, a distance of about twenty feet, wide enough for a car to pass.

With reference to claimant's deposition taken on May 1, 1961, on cross-examination, claimant was asked:

"Q. In the car. And the question was: 'In other words, you just fainted? Answer: Well, I don't know what actually happened. That's a closed shop and we been running motors in there and everything and with my head down and feet up in the air and something caused —caused it, either carbon in the shop or me having my feet up higher than my head. I don't know exactly, but they don't have any ventilation system there and we were always complaining about those carbon fumes and there was a car in the stall—Well, my stall is here and the fellow behind me, he has got a stall, back to each other. When he's running a motor I get all the fumes and when I'm running a motor he gets all my fumes.' Is that true?

"A. That's correct.

"Q. Question: 'You weren't running a motor then? Answer: No, I wasn't. Question: You don't know whether he was running a motor? Answer: They go in and out. I don't pay a whole lot of attention.' In that deposition, you said you didn't pay a lot of attention. That was in 1961, you didn't say definitely.

"A. Because I know the washboy pulled the car in on the wash rack, and the car he was over there working on it, washing it, and when Smiley got back from lunch, I remember definitely that he did start it. I couldn't remember then, but I know now he did start it because he was adjusting the the valves in the carburetor."

Claimant testified that they had circulating fans and big heaters, but had no ventilation or exhaust outlets; that there are two doors, one on each side of the building and cars are brought in at each door; and that he was working right beside a large overhead door—" * * * where I was working was right at the door and sort of in a corner."

Mr. A. Ray Barker, employer, testified:

**450**

"A. That building is seventy feet east and west, a hundred and twenty feet north and south, and a seventy [sic] foot ceiling, and half the building is not occupied by it but still in the same building, which the ventilation has never been questioned. I would say it doesn't need any ventilation. We've got four big fans that carry all the circulation outlets. You have got a seventy [sic] foot ceiling.

\* \* \* \* \* \*

"A. There is always circulation, because the doors are open for men constantly coming in and out."

Mr. Barker further testified that he had been there for fifteen years and never had any complaints about ventilation.

One of the medical witnesses testified that if the concentration of carbon monoxide were high enough to affect one person, it would probably have some effect upon everybody.

Claimant suffered a skull fracture and testified that he bled from his ear for two or three days. He was in the hospital approximately two weeks and stated that while there he kept getting terrible headaches and dizzy spells. Claimant's clinical record states in part:

"1. HISTORY: This 35 year old white male automechanic presented on 11–21–60, following a black-out spell at which time he sustained an injury to the right side of his head. Previously the patient had had dizzy spells and 'fainting feeling,' for many years. He was hospitalized here in January 1960 for acute brain syndrome possibly secondary to alcoholic intoxication. He has been nervous for years.

\* \* \* \* \* \*

"4. COURSE IN THE HOSPITAL: \* \* \* He improved during his hospital stay and the x-rays did not show the fracture that was clinically present in the base of his skull as indicated by blood in his middle ear and bloody spinal fluid. The patient was not drowsy and complained of only mild headache which was relieved by aspirin. \* \* \*

"DIAGNOSIS: 1. Head injury with basilar skull fracture, treated, improved. 2. \* \* \*

"STATUS OF SERVICE CONNECTED DIS: Neurasthenia—not eval. for rating by psychiatric department."

The trial court made the following pertinent findings of fact:

"3. That the plaintiff did not sustain an accidental injury arising out of and in the course of his employment.

"4. That the accident complained of by the plaintiff was not reasonably incident to his employment.

"5. That the disability claimed by the plaintiff was not an actual and direct result of any accident incident to his employment.

"6. That the plaintiff failed to establish a causal connection as a medical probability by expert medical testimony, that the alleged disability of the plaintiff was a natural and direct result of an accident incident to his employment.

"7. That the plaintiff merely established that as a medical possibility, there might have been a causal connection between the alleged disability and an accident incident to his employment.

"8. That the plaintiff failed to prove any disability as defined in the Workmen's Compensation Act of the State of New Mexico.

"9. That any injury claimed by plaintiff was not proximately caused by an accident arising out of and in the course of his employment with A. Ray Barker Motor Company.

"10. That the plaintiff did not sustain a compensable injury arising out of and in the course of his employment with A. Ray Barker Motor Company."

Under point I, claimant contends that in determining the facts all evidence favorable to him must be considered as true, and all favorable inferences must be indulged in. Claimant concedes the inapplicability of this point under our recent decisions in Hickman v. Mylander, 68 N.M. 340, 362 P.2d 500, and Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824.

■■■■ Claimant's second point is that the Workmen's Compensation Act is to be liberally construed. In numerous cases this doctrine has been followed by this court. Montell v. Orndorff, 67 N.M. 156, 353 P.2d 680; White v. Valley Land Company, 64 N.M. 9, 322 P.2d 707; Briggs v. Zia Company, 63 N.M. 148, 315 P.2d 217; Armijo v. Middle Rio Grande Conservancy District, 59 N.M. 231, 282 P.2d 712; Mann v. Board of County Commissioners, 58 N.M. 626, 274 P.2d 145; and cases cited therein. We have also said that the Workmen's Compensation Act does not make the employer an insurer against injury or death of the employee. Teal v. Potash Company of America, 60 N.M. 409, 292 P.2d 99. Liberal construction does not mean a total disregard for the statute, or repeal of it under the guise of construction. Ross v. Marberry & Company, 66 N.M. 404, 349 P.2d 123.

A claimant, in Workmen's Compensation cases, under Ch. 67, Laws 1959, has the burden of proving: (1) That he sustained an accidental injury, arising out of and in the course of his employment; (2) that the accident was reasonably incident to his employment; and (3) that the disability is a natural and direct result of the accident. Also, in cases where the defendants deny that an alleged disability is a natural and direct result of the accident, the workman must establish a causal connection, as a medical probability, by expert medical testimony. No award of compensation shall be based on speculation or on expert testimony that, as a medical possibility, the causal connection exists. Section 59–10–13.3, N.M.S.A., 1953 Comp.

Claimant's last two points assert that reversible error was committed by the trial court when it adopted the findings of fact quoted above. Each point is prefaced with the statement that the attacked findings are not supported by the evidence if all the testimony in favor of plaintiff is considered as true, as well as all inferences favorable to him which can be drawn therefrom. In his reply brief, claimant concedes that these prefacing statements do not state the law applicable in New Mexico. This court, in Montano v. Saavedra, supra, enunciated the proper method of treatment of the evidence before it when a trial court is called upon to dismiss an action under the authority of Rule 41(b), Rules of Civil Procedure, (§ 21–1–1(41) (b), N.M.S.A., 1953 Comp.).

Under point III, claimant contends that the trial court erred in finding that claimant did not sustain a compensable injury arising out of and in the course of his employment. Since the trial court apparently rejected claimant's theory as to the cause of the fall, and there is substantial evidence to support the trial court's view in this regard, we consider whether claimant's head injury, with basilar skull fracture suffered when he fell on the concrete floor, is compensable.

We have already related the occurrences immediately prior to claimant's fall. The evidence also reveals that claimant had dizzy spells and a "fainting feeling" for many years previous to the injury. He had been nervous for years and, on occasion, drank heavily, mostly beer.

Dr. M. Robert Klebanoff, a neuro-surgeon called by claimant, testified that, after examining and x-raying claimant, he "felt that, number one, the patient had a grandmal or major convulsive seizure, * * *." and thereafter the following question was asked and answer given:

"Q. Doctor, Mr. Luvaul has testified here today that at the time that he had this incident of November 21, 1960, he had been working—It was 2:00 in the afternoon, I be-

lieve. He had been working in a completely closed garage in which a car had been running near where he was working, certainly indicating there was an unknown amount of carbon monoxide in the car and working on his back with his head and shoulders under the dashboard of a car and his feet above his head across the back seat of the car, that he got up, walked across the room, put his tools in his toolbox, turned around, and collapsed, experiencing the seizure that you have referred to. In your opinion, would the fact that the air presumably had a somewhat diminished oxygen content, or whatever results from a medical standpoint when a car is running in a closed area, and working with his body in that particular position, the head below the heart, could that account for the convulsive seizure he experienced?

"A. It is conceivable, but I don't—without knowing the exact concentration of the carbon monoxide—without knowing the exact concentration of the oxygen, I don't see how anyone can positively state it is a direct cause.

It possibly could have happened. In my opinion, I don't think so."

Thus, we have a case in which the employee falls, while at work, on an ordinary, ground-level, concrete floor, and, in the course of the fall, hits no machinery or other objects, nor does he fall from a platform or roof to the ground. The problem is made more difficult where a pre-existing infirmity may have caused the fall or contributed thereto.

In Reynolds v. Ruidoso Racing Association, Inc., 69 N.M. 248, 365 P.2d 671, we reviewed the cases wherein this court has upheld the right to compensation where an injury was accidently incurred and disability resulted therefrom, even though the workman was suffering from a pre-existing disease or infirmity, absent which there would have been no injury.

In Walker v. Woldridge, 58 N.M. 183, 268 P.2d 579, this court said:

"It is not enough that the injury arose in the course of employment. For an injury to be compensable, it must 'arise out of' and in the course of employment and not wilfully suffered or intentionally inflicted. The principles 'arising out of' and 'in the course of employment' within the meaning of the Workmen's Compensation Act must coexist at the time of the injury in order that an award be sustained. These terms are not synonymous, the

former relates to the cause of the injury and the latter refers to the time, place and circumstances under which the injury occurred. The injury must be reasonably incident to the employment or one flowing therefrom as a natural consequence.

In Gilbert v. E. B. Law & Son, Inc., 60 N.M. 101, 287 P.2d 992, we held that before an injury may be said to be compensable as "arising out of employment," the accident causing the injury must result from a risk reasonably incident to the employment; a risk common to the public generally and not increased in any way by the circumstances of the employment is not covered by our Act.

In Barton v. Skelly Oil Co., 47 N.M. 127, 138 P.2d 263, it is said:

"'* * * the employment must have had some causal connection with the accident; the accident must result from a risk reasonably incident to the employment, or the injury cannot be said to arise out of it. A risk common to the public generally, and not increased by the circumstances of the employment, would not fall within this language of the act. A risk peculiar to the industry certainly would.' Merrill v. Penasco Lumber Co., 27 N.M. 632, 204 P. 72, 74."

Although it may be difficult to distinguish between a fall from a platform or ladder, or against some object such as a machine, and a fall to the floor, we must recognize the fundamental principle that the employment must contribute something to the hazard of the fall.

There is a division of opinion among the courts as to whether an injury due to an idiopathic fall on a concrete floor may be said, as a matter of law, to have arisen out of the employment. Some courts can see no way of distinguishing between a fall to the floor and one where the fall is from a platform or ladder or against an object such as a machine. General Ins. Corp. v. Wickersham, (Tex.Civ.App.1950), 235 S.W.2d 215; Pollock v. Studebaker Corp., Ind.App., 97 N.E.2d 631.

There are cases which deny awards for level floor, idiopathic falls. Andrews v. L. & S. Amusement Corporation, 253 N.Y. 97, 170 N.E. 506; Cinmino's Case, 251 Mass. 158, 146 N.E. 245, 37 A.L.R. 769; Stanfield v. Industrial Commission, 146 Ohio St. 583, 67 N.E.2d 446; Sears Roebuck & Co. v. Industrial Commission, 69 Ariz. 320, 213 P.2d 672; Remington v. Louttit Laundry Co., 77 R.I. 185, 74 A.2d 442; Dasaro v. Ford Motor Co., 280 App. Div. 266, 113 N.Y.S.2d 413; Montanari v. Lehigh Cement Co., 282 App.Div. 1082, 126 N.Y.S.2d 180; Riley v. Oxford Paper Co., 149 Me. 418, 103 A.2d 111; Henderson v. Celanese Corp., 30 N.J.Super. 353, 104 A. 2d 720, aff'd 16 N.J. 208, 108 A.2d 267.

When an employee, solely because of a fainting spell or other physical infirmity, falls and sustains a skull fracture or other injury, the question arises as to whether the injury sustained is one arising out of and in the course of the employment. 1 Larson's Workmen's Compensation Law, § 12.11, pp. 158–160, states:

"The basic rule, on which there is now general agreement, is that the effects of such a fall are compensable if the employment places the employee in a position increasing the dangerous effects of such a fall, such as on a height, near machinery * * *. The currently controversial question is whether the effects of an idiopathic fall to the level ground or bare floor should be deemed to arise out of the employment."

If claimant's previous physical condition caused him to fall to the concrete floor and he sustained a basilar skull fracture, we come to this. In what manner did the employment contribute to the hazard of the fall? In every case there must be a causal connection between the injury and the employment, or the condition under which it is required to be performed, before the injury can be found to arise out of the employment. Any person who falls, if not prevented from doing so, will strike the ground or floor. That the floor at the place of employment was concrete should not, in our opinion, alter the rule applica-ble in the circumstances. Compare Cin-mino's Case, supra. Claimant's fall and injury were not the result of a risk involved in his employment or incident to it. Thus, we are of the opinion that the evidence supports the trial court's findings of fact.

■ Claimant's final point is that the trial court erred in its findings of fact Nos. 6, 7 and 8, heretofore set out, and in failing to adopt claimant's findings to the contrary.

Finding of fact No. 6 is that the claimant failed to establish a causal connection, as a medical probability by expert medical testimony, that the alleged disability was a natural and direct result of an accident incident to his employment. The trial court, in finding of fact No. 8, found that claimant failed to prove any disability as defined in the Workmen's Compensation Act. Again, claimant prefaces his contention with the statement that the trial court's findings are erroneous, if all testimony of the claimant is considered as true, as well as all favorable inferences which can be drawn therefrom.

A review of the evidence under this point would serve no useful purpose. Suffice it to say that we have carefully reviewed the record, particularly the evidence of Drs. Thomas Evilsizer, M. Robert Klebanoff and Edward Shealy, and the testimony relating to any decrease in claim-

ant's wage earning ability as shown by the exhibits and claimant's testimony. Viewing the evidence in the light most favorable to support the judgment, we hold that the trial court's findings of fact Nos. 6, 7 and 8 are supported by substantial evidence. Totah Drilling Company v. Abraham, 64 N.M. 380, 328 P.2d 1083; Mountain States Aviation, Inc. v. Montgomery, 70 N.M. 129, 371 P.2d 604.

The judgment is affirmed. It is so ordered.

NOBLE and MOISE, JJ., concur.